104 So.2d 148 (1958)
235 La. 396
STATE of Louisiana
v.
Dale E. BIRDSELL.
No. 43736.
Supreme Court of Louisiana.
February 10, 1958.
On Rehearing June 27, 1958.
*149 Jack N. Rogers, Baton Rouge, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., J. St. Clair Favrot, Dist. Atty., Scallan E. Walsh, Asst. Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., Baton Rouge, for appellee.
HAWTHORNE, Justice.
Defendant Dale E. Birdsell was charged with violating a provision of the Louisiana Uniform Narcotic Drug Act. The bill of information avers that he "* * * feloniously violated Title 40, Section 962, Subsection B of the Louisiana Revised Statutes in that he had or possessed a hypodermic syringe and needle, contrary to the form of the Statute of the State of Louisiana * * *". From his conviction and sentence to a term of imprisonment at hard labor he has appealed.
For reversal of his conviction appellant cites four alleged errors committed in the court below, all of which are set forth in bills of exception timely reserved and perfected.
His first complaint is that the judge erred in overruling his motion to quash the bill of information. Appellant contends *150 that the information is insufficient to charge a crime under the laws of this state because it does not state every fact and circumstance necessary to constitute the offense chargedthat is, it does not allege that the felonious possession of the hypodermic needle was not authorized by the prescription or certificate of a physician issued within the period of one year prior thereto. The statute under which appellant was charged makes the possession of a hypodermic syringe or needle unlawful "unless such possession be authorized by the prescription or the certificate of a physician issued within the period of one year prior thereto".
Article 228 of the Code of Criminal Procedure provides that it is no objection to an indictment that it does not aver that the accused was not embraced within the terms of a proviso of the statute creating the offense, for what comes by way of a proviso or exception must be urged by way of defense. Furthermore, the Louisiana Uniform Narcotic Drug Act provides in R.S. 40:979 that "In any complaint, information, or indictment, and any action or proceeding brought for the enforcement of any provision of this Sub-part, it shall not be necessary to negative any exception, excuse, proviso, or exemption contained in this Sub-part, and the burden of proof of any such exception, excuse, proviso, or exemption shall be upon the defendant".
Appellant does not take issue with this principle of law. He contends, however, that the portion of R.S. 40:962 providing "unless such possession be authorized by the prescription or the certificate of a physician issued within the period of one year prior thereto" is not an exception, excuse, proviso, or exemption, but sets out a fact and circumstance necessary to be charged in the information.
We do not so read or interpret the statute, and accordingly we do not think there is any merit to this complaint.
Appellant next complains that the lower court erred in overruling his motion for a mistrial, filed under the following circumstances: A former deputy sheriff, while testifying for the prosecution, stated that he and other police officers went to appellant's office to arrest him on a charge of extortion. Counsel for the accused objected to this statement on the ground that it tended to impeach the character of the accused, which was not at issue, and moved for a mistrial.
The trial judge in his per curiam informs us that while this witness was being cross-examined, counsel for the accused raised the question that he had failed to reveal everything that had taken place at the time of the arrest, and suggested that the witness had not told the whole truth about what had happened at that time. On redirect examination the witness volunteered the statement complained of, and did not make it in direct response to a question of the district attorney. Upon objection the court instructed the jury to disregard the remark of the witness and further informed the jury that any statement of a witness in reference to any other charge had no bearing on the charge for which defendant was being tried and was to be disregarded by the jury in the proof of the charge presently before the court.
The law is well settled that the trial for a criminal offense cannot be defeated or nullified because a witness volunteers an objectionable remark, particularly where the trial judge instructs the jury to disregard the remark. State v. Rugero, 117 La. 1040, 42 So. 495; State v. Jones, 118 La. 369, 42 So. 967; State v. Goodwin, 189 La. 443, 179 So. 591; State v. Martin 193 La. 1036, 192 So. 694; State v. Labat, 226 La. 201, 75 So.2d 333.
In order to understand the next alleged error urged, it is necessary to know that a previous conviction of appellant on this same charge was reversed and set aside on appeal and a new trial granted. See 232 La. 725, 95 So.2d 290. This next complaint is that the trial judge erred in overruling appellant's motion for a mistrial following a statement made by an assistant district *151 attorney to the jury in his closing argument. The statement of the assistant district attorney was that the accused offered a prescription for a hypodermic syringe and needle, and certain testimony concerning the prescription, for the first time at the trial in the instant case.[1]
The record in the instant case shows that counsel for appellant in argument to the jury directed the jury's attention to the prior trial of appellant. However, the complaint here is that the remark of the assistant district attorney was a remark dehors the record and was a comment on the lack of such evidence in a previous trial, and that the remark raised a strong implication that the evidence had been manufactured between trials.
From the record in the instant case we cannot say that the remark of the assistant district attorney was an implication that the evidence had been manufactured between trials. The trial judge in his per curiam informs us that he did not consider the remark improper or prejudicial, and that he had previously instructed the jury that the argument of counsel formed no part of the evidence in the case.
Under Article 381 of the Code of Criminal Procedure counsel may argue to the jury both the law and the evidence of the case, but must confine themselves to matters as to which evidence has been received or of which judicial cognizance is taken, and to the law applicable to the evidence. Under the jurisprudence of this court, however, before a verdict approved by the judge is set aside on the ground of improper argument by the district attorney, the court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Ailes, 133 La. 563, 63 So. 172; State v. Shoemake, 143 La. 65, 78 So. 240; State v. Davis, 178 La. 203, 151 So. 78; State v. Jackson, 227 La. 642, 80 So.2d 105.
In view of the fact that the trial judge had previously instructed the jury that argument of counsel formed no part of the evidence in the case, we cannot say that the jury failed to do its duty and did not accept and follow these instructions. Moreover, we are not convinced that the jury was influenced by the remark and that it contributed to the verdict.
Appellant finally complains of the overruling of his motion in arrest of judgment. In this motion he alleges that certain provisions of the Uniform Narcotic Drug ActR.S. 40:962, 961(17), and 979 are unconstitutional and violate his constitutional rights guaranteed by the Constitution of the United States in Sections 1 and 2 of Article 4 and in Section 1 of the Fourteenth Amendment.
As we have previously said, R.S. 40:962 (B) makes it unlawful for any person, except persons of certain specified classes, to have or possess a hypodermic syringe and needle unless possession is authorized by prescription or certificate of a physician issued within the period of one year prior thereto. R.S. 40:961(17) provides that the term "physician" as used in the statute means a person authorized by law to practice medicine in this state and any other person authorized to treat sick or injured persons in the state and to use narcotic drugs in connection with such treatment. R.S. 40:979 provides that it shall not be necessary to negative any exception, excuse, proviso, or exemption in an indictment or information, and places the burden of proof of such exception, etc., upon the defendant.
There is no merit in any of the ground urged for the unconstitutionality of these sections of the statute, and it would serve no useful purpose even to discuss them in *152 this opinion. For example, appellant contends that these sections of the statute violate Section 1 of Article 4 of the United States Constitution because, he argues, he legally possessed the hypodermic syringe in Mississippi under both federal and state law, and to deny him the right to possess the equipment in Louisiana on the basis of a Mississippi prescription was a failure to give full faith and credit to a public act of another statenamely, the valid and legal issuance of a prescription by a doctor of that state. He also argues that the sections of the statute violate Section 2 of Article 4, which provides that the citizens of each state shall be entitled to all privileges and immunities of the citizens of the several states, by denying a citizen of another state the right to come to Louisiana with hypodermic equipment without subjecting himself to criminal prosecution; that consequently his right to pass freely from Mississippi to Louisiana was abridged, in contravention of this section of the Constitution which guarantees and protects his right to pass freely from one state to another.
For the reasons assigned the conviction and sentence are affirmed.
SIMON, J., absent.

On Rehearing
HAMITER, Justice.
As pointed out in our opinion on the original hearing of this cause the defendant is charged with having "* * * feloniously violated Title 40, Section 962, Subsection B, of the Louisiana Revised Statutes in that he had or possessed a hypodermic syringe and needle, contrary to the form of the Statutes of the State of Louisiana, * *."
The mentioned subsection reads: "It is unlawful for any person, except a dealer in surgical instruments, apothecary, dentist, veterinarian or nurse, attendant or intern of a hospital, sanatorium or institution in which persons are treated for disability or disease, at any time to have or possess a hypodermic syringe or needle unless such possession be authorized by the prescription or the certificate of a physician issued within the period of one year prior thereto. Provided that this sub-section shall not be held to apply to syringes or needles for the treatment of fowl or livestock." Attacking this provision, the defendant averred in his motion in arrest of judgment that it violates the fourteenth amendment to the Federal Constitution in that (among other reasons) it is "clearly unreasonable" and deprives him "of his liberty without due process of law."
In granting this rehearing we limited it to the question of whether LRS 40:962(B) is violative of that part of the Federal Constitution (Section 1 of the fourteenth amendment) which guarantees that no state shall "deprive any person of life, liberty, or property without due process of law."
It is well established that the mentioned due process clause must yield to the right of the state to enact laws under its police power to secure and protect the general health, welfare, and safety of its citizens. The legislation, however, must not be arbitrary or unreasonable. Thus in 11 American Jurisprudence verbo Constitutional Law, Section 302 it is stated: "The fixed rule and basic standard by which the validity of all exercise of the police power is tested is that the police power of the state extends only to such measures as are reasonable and that all police regulations must be reasonable under all circumstances. Too much significance cannot be given to the word `reasonable' in considering the scope of the police power in a constitutional sense, for the test used to determine the constitutionality of the means employed by the legislature is to inquire whether the restrictions it imposes on rights secured to individuals by the Bill of Rights are unreasonable, and not whether it imposes any restrictions on such rights. It has been said that the only limitation upon the exercise of the police power is that such exercise *153 must be reasonable. The validity of a police regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable or arbitrary and whether it is really designed to accomplish a purpose properly falling within the scope of the police power.
"* * * A statute to be within this power must also be reasonable in its operation upon the persons whom it affects, must not be for the annoyance of a particular class, and must not be unduly oppressive." These pronouncements were quoted with approval in Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248. See, also, City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239.
Further, in 11 American Jurisprudence verbo Constitutional Law, Section 304 it is said: "It is difficult, if not impossible, to lay down an all-embracing test of reasonableness by which the great variety of situations impelling legislative regulation can be measured. Thus, what constitutes a reasonable interference with private property by the exercise of the police power is a matter for which there is no certain test, but one which rests in human judgment. * * * All statutory restrictions of the use of property must be imposed upon the theory that they are necessary for the safety, health, or comfort of the public. Accordingly, if a restriction or regulation is without reason or necessary, it cannot be enforced. * * *" And at page 142 of the supplement to that authority an added paragraph (to Section 303) is noted which reads: "A regulation which ostensibly seeks the protection of the public safety but which factually runs counter to the common experience of mankind is unreasonable."
The Uniform Narcotic Drug Law was incorporated in our statutes through the adoption of Act No. 14 (Second Extra Session) of 1934. The only acts then prohibited (now LRS 40:962(A)) were the following: "Section 2. (Acts Prohibited) It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this Act."
In 1951, by Act 30 of the First Extra Session, the Legislature added other prohibitions, including that contained in the above quoted provision here under attack i. e., LRS 40:962(B). Obviously, this amendment, just as the original statute, was adopted for the praiseworthy purpose of suppressing the indiscriminate use of narcotics, the harmful effects of which to society are too well known to require a detailed discussion. Hence, the assailed addition is authorized, as an exercise of the state's police power, provided that it is not unreasonable.
LRS 40:962(B), as before shown, denounces as an offense the possession of a hypodermic syringe or needle without a physician's prescription or certificate (certain exceptions not applicable here are provided), regardless of the use for which it is possessed. Moreover, the prescription or certificate must have been issued within a year by a Louisiana doctor (LRS 40:961 (17)) and the accused carries the burden of proving such issuance (LRS 40:979).
Inasmuch as an accused charged under LRS 40:962(B) cannot show (as a defense) that his possession of a hypodermic syringe or needle (without a Louisiana physician's prescription) is for harmless use such statutory provision, in our opinion, is unreasonable and hence unconstitutional. Created thereby is a conclusive presumption that the possession is for an illegal purposean unrebuttable presumption which factually runs counter to human experience.
Thus, we are concerned here with an object that is not inherently dangerous, noxious or harmful. Rather, the article in question, as is well recognized, is widely used *154 for numerous beneficial and helpful purposes. True, it may be employed in the illegal administering of narcotics with deleterious results; however, so may numerous other generally advantageous appliances be used for ulterior motives. For example, the blow torch is frequently resorted to by burglars in the opening of iron safes. Yet, certainly it would not be reasonable for the Legislature (as a means of suppressing safe robberies) to denounce as a crime the possessing of a blow torch without, at the same time, permitting an accused possessor to show (in his defense) that his possession was for a lawful purpose.
It is important to notice too that no statute of this state prohibits the selling of a hypodermic syringe or needle. Seemingly, if it were reasonable and proper to make mere possession of such an instrument (even though for helpful purposes) a criminal offense the Legislature should also declare the article contraband and forbid the sale thereof.
With further reference to the above mentioned conclusive presumption, the United States Supreme Court appropriately observed in Manley v. State of Georgia, 279 U.S. 1, 49 S.Ct. 215, 217, 73 L.Ed. 575, as follows: "If the presumption is not unreasonable and is not made conclusive of the rights of the person against whom raised, it does not constitute a denial of due process of law. * * * A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment. * * Mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty or property. * * *"
In its brief to this court the state argues: "* * * The question at issue here is the constitutionality of the act in question * *. Suffice it to say that this statute in question is a part of the Uniform Narcotics Act which has been adopted in 45 states in the union."
We do not concede that the adoption of a particular statute by an overwhelming majority of the states renders the law free from attack on a constitutional basis. Of course, this fact might be considered as persuasive of the statute's constitutionality. But this matter of persuasion is without pertinence here. LRS 40:962 (B), under attack in this cause, is not contained in the Uniform Narcotic Drug Law; it was adopted by our Legislature, as before shown, some seventeen years after the enactment of the uniform law. Moreover, insofar as we are able to determine, no other state has a like provision.
Missouri did amend its uniform law so as to incorporate therein a somewhat similar provision; but the very wording of the amendment removes it from the attack made herein. Thus, under the Missouri statute (as amended) it is a crime to "possess any apparatus, device or instrument for the unauthorized use of narcotic drugs." (See Uniform Laws Annotated, Volume 9B, verbo Narcotic Drugs, page 285.) Clearly under this language an accused charged with possessing a hypodermic needle may show, as a defense, that his possession of such an instrument was not for an unlawful purpose. No showing of that kind is permitted under our statute in view of the aforediscussed conclusive presumption thereby created.
Since LRS 40:962(B) is an improper and unreasonable exercise of the police power it is our province and "duty to declare that portion of the law invalid" (Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, supra) and to set aside the conviction thereunder of this defendant.
In keeping with our above announced conclusion are certain observations contained *155 in State v. Birdsell, 232 La. 725, 95 So.2d 290, 292 (decided by a unanimous court), wherein the conviction of this defendant (on the same charge now under consideration) was set aside and he was granted a new trial. During the original trial, on an objection of the state, the accused was prohibited by the district judge from answering the question of whether he had ever used the syringe or needle for narcotics. In holding the ruling erroneous, we said: "Manifestly, the complaint by the defendant of a denial of his right to introduce evidence for the purpose of explaining his possession of these prohibited articles to an end to negate and repel the charge of guilty knowledge and illegal intent or motive is sound and meritorious."

* * * * * *
"It is not for this Court nor was it for the lower court to say what effect the evidence if received would have produced on the jury. Had the defendant been afforded the opportunity of establishing the absence of criminal intent, and if he had done so, it would have been the duty of the jury to acquit him. * * *"
For the reasons assigned the conviction and sentence appealed from are annulled and set aside and the defendant is ordered discharged.
PONDER, J., dissents.
HAWTHORNE, Justice (concurring.)
As shown by the opinion on first hearing, of which I was the author, appellant attacked the constitutionality of R.S. 40:962(B) on numerous grounds, and as presented at that time none of these grounds of attack raised any serious questions in my mind. After a careful consideration of the opinion of this court on rehearing, however, I am convinced that the statute is an unreasonable exercise of the police power and hence is unconstitutional. Accordingly I subscribe fully to the views of the court on rehearing.
NOTES
[1] The prescription was given by a Mississippi physician not authorized to practice medicine in Louisiana. It was for 10 cc. of aqueous procaine penicillin and called for the injection into the arm muscle, every four hours if needed, of one cc. of the solution.