**80 So.2d 105**

**STATE of Louisiana**

**v.**

**Carl JACKSON and Wilbert Smith.**

**No. 42177.**

March 21, 1955.

Rehearing Denied April 25, 1955.

Starring & Roy, Baton Rouge, for appellants.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., J. St. Clair Favrot, Dist. Atty., Jack P. F. Gremillion, First Asst. Dist. Atty., Baton Rouge, for appellee.

HAWTHORNE, Justice.

Carl Jackson and Wilbert Smith, two Negro juveniles 15 and 16 years of age respectively, were both charged with the crime of aggravated rape of a white woman, tried, found guilty, and sentenced to death. From their convictions and sentences they have appealed.

During the trial in the lower court approximately 30 bills of exception were perfected for consideration by this court. In this opinion, however, we shall discuss only a few of these bills, as the circumstances under which the others were reserved will probably not arise in the new trial to which we think the defendants are entitled in the instant case.

Aggravated rape, the crime for which the defendants were prosecuted, is denounced by Article 42 of the Criminal Code, R.S. 14:42, which reads as follows:

"Aggravated rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances:

"(1) Where the female resists the act to the utmost, but her resistance is overcome by force.

"(2) Where she is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

"(3) Where she is under the age of twelve years. Lack of knowledge of the female's age shall not be a defense. * * "

In answer to a motion for a bill of particulars the State informed the accused that they were being prosecuted under the provisions of subsections (1) and (2) of this article. Appellants by motion then sought to have the State elect under which particular subsection they were being prosecuted, contending that subsections (1) and (2) are inconsistent, and that the prosecution must be under one or the other but not under both. This motion was overruled, and a bill of exception was reserved.

The identical contention was made in State v. Prince, 216 La. 989, 45 So.2d 366, and found to be without merit. That case is controlling here. Appellants, however, contend that the decision in that case is erroneous and should be overruled. They argue that subsection (1) is predicated on positive action, that is, "Where the female resists the act to the utmost," whereas subsection (2) is predicated on the lack of positive action, that is, "Where she is prevented from resisting the act by threats of great and immediate bodily harm"; that under subsection (1) the resistance of the female must continue until the very moment of the act of rape, while under subsection (2) she is prevented from resisting.

■ This argument is illogical and does not take into account the realities of the situation. Moreover the statute itself provides that aggravated rape may be committed under "any one or more of the following circumstances". This means that the circumstances may consist entirely of those set out in any one of the subsections or may be a combination of those set out in any two or in all three. The words "to the utmost" in subsection (1) do not necessarily mean that the resistance must continue up to the moment of the rape, but mean that the woman must show real resistance until she is either overcome by superior strength or compelled to stop resisting before the actual rape is committed by threats of bodily harm as set out in subsection (2). Consequently the ruling of the trial judge was correct.

■ The next bill which we shall discuss, however, shows prejudicial error which entitles the defendants to a new trial.

While a prospective juror, Mr. Richards, was being examined on his voir dire by Mr. Roy, one of the attorneys for the defendants, he was asked the following question:

"Mr. Richards, you have stated that you have no conscientious scruples against the infliction of capital punishment. Now, do you have any conscientious scruples in favor of a qualified verdict in such a case as this?"

When objection was made by the State, defendants' other counsel, Mr. Starring, rephrased the question thus:

"The question that Mr. Roy was asking was would you have any scruples, any hindrance, against bringing in a qualified verdict?"

The State objected to this question as improper, the objection was sustained by the court, and defendants peremptorily challenged the juror.

The trial judge tells us in his per curiam that he sustained the objection because he considered the question improper, confusing, and meaningless. We do not think that the original question, when considered with the question as rephrased, was improper, confusing, and meaningless. Evidently the trial judge overlooked the fact that the question was rephrased, for in his per curiam he considered only the original question. To us the question simply means this: Had the juror any scruples against bringing in a qualified verdict in a case where two Negroes are charged with the rape of a white woman? Consequently it was a perfectly proper question, and counsel for the defendants were entitled to have it answered.

In State v. Henry, 196 La. 217, 198 So. 910, 914, this court was presented with a lower court ruling which had been made under similar conditions during a murder trial. Two prospective jurors had been examined by the district attorney and had stated that they had no conscientious scruples against the infliction of capital punishment. Counsel for the defendant then posed the following questions to these two prospective jurors:

To Charles Quirk: " 'When you retire to the jury room if you feel that under all of the circumstances of the case that guilty without capital punishment is a fair thing you won't hesitate to bring such a verdict will you?' "

To W. D. Duplechain: " 'I want to ask you if she is proven guilty if you could also vote for a verdict of guilty without capital punishment, but [or] imprisonment for life?' "

Counsel for the State in the Henry case objected to these questions, his objections were sustained, and the court limited the defendant's inquiries by stating " 'you may ask the question if he will take the law as the court gives it to him.' "

In that case the defendant exhausted all of her peremptory challenges prior to the qualification of the twelfth juror. In disapproving the ruling of the trial judge in the Henry case this court said:

"It is our opinion that the questions propounded to Messrs. Quirk and Duplechain were not improper but were framed for the purpose of ascertaining if they had any prejudice against rendering a qualified verdict in a murder case, or if they only favored the death penalty in such a case. To be

impartial jurors in this case they should have been free of any scruples or personal opinions which would have prevented them from imposing either the death penalty or life imprisonment. If they had conscientious scruples against the infliction of capital punishment they were subject to challenge for cause by the state. Article 352, Code of Criminal Procedure. If they would impose only the death penalty in a murder case they were likewise subject to challenge for cause by the defendant. This was not an effort to show that they were personally biased or prejudiced against the defendant nor was it an attempt to commit them in advance to a qualified verdict, but counsel, through their examination, were endeavoring to ascertain whether or not the penalty of death was the only punishment these prospective jurors considered proper and adequate in murder cases. The trial judge's refusal to allow defendant's counsel to go further than to ask the juror 'if he would take the law as the court gives it to him,' was based upon the erroneous belief that the jurymen's choice between a qualified and an unqualified verdict must be grounded upon the application of law as given by the court. But the law gives jurymen in murder cases an absolute discretion as to which form of punishment will be inflicted upon the accused if found guilty. The trial judge's ruling made it impossible to elicit the necessary information from these two gentlemen tending to show their qualifications as impartial jurors in a murder case with reference to the ultimate punishment to be inflicted in the event of a verdict finding the defendant guilty. Therefore, the accused was deprived of the opportunity, which she was entitled to, to intelligently exercise her constitutional right of peremptory challenge and challenge for cause."

In the instant case defendants exhausted all of their peremptory challenges before the jury was completed, and the record discloses that they were forced to accept an obnoxious juror.

What we have quoted above from the Henry case is applicable to the instant case and is controlling here.

Counsel for the State in support of the trial judge's ruling call our attention to the case of State v. Sanford, 218 La. 38, 48 So.2d 272. In that case this court approved a ruling of the trial judge forbidding a somewhat similar question to be asked a prospective juror on his voir dire, concluding that the question was confusing and misleading. In the Sanford case this court pointed out that defense counsel should have made some effort to rephrase the question along simpler lines and stressed the trial judge's per curiam observation that his ruling was directed at the form in which the question was asked rather than at its substance. This court then spoke with approval of its holding in the Henry case, recognizing the right of defense counsel to interrogate prospective jurors concerning their attitude toward the qual-

ified verdict. In view of the fact that counsel for defendants in the case at bar rephrased their question in such a way that its meaning was perfectly clear we do not see how the Sanford case is apposite here.

■ Although our decision in this case rests on the point discussed above, we should like to call attention to certain things in the trial of this case which we think were improper. It is, of course, the duty of the district attorney to prosecute the State's case with perseverance and energy and to use every lawful means to bring about a just conviction. It is also his duty, however, to see that no conviction is obtained except in strict conformity with the law, and that the accused is not deprived of any constitutional rights or privileges. Moreover, counsel for the State must at all times try to conduct the prosecution in such a manner as to avoid unnecessary errors in the trial. In many instances defendants who are guilty of the crimes with which they are charged are granted new trials by this court because prosecuting officials were too anxious to secure a conviction and committed unnecessary errors which had the effect of depriving defendants of their constitutional and statutory rights.

In the instant case the prosecution could have been conducted in such a manner as to have avoided giving counsel for defendants opportunity to reserve many of the bills which have been perfected.

During the closing argument, for example, the district attorney made the following statement:[1]

"Gentlemen, if the state hasn't proved a case of rape by each one of these accused, it's never been proven. And there is something else I am going to tell you now. This court is going to tell you that there's five verdicts that you can render. I want you to listen to this carefully. There is only one verdict to render as far as the district attorney's office is concerned. Don't come in here with any qualified verdict. We don't want it. Bring in a verdict of guilty as charged. And if you can't do that with the proof that's been put on this witness stand, gentlemen, let them go. And I mean it from the bottom of my heart."

Under Article 381 of the Code of Criminal Procedure, counsel may argue to the jury both the law and the evidence of the case, but must confine themselves to matters as to which evidence has been received, or of which judicial cognizance is taken, and to the law applicable to the evidence; and counsel shall refrain from any appeal to prejudice.

■ In the argument quoted above counsel for the State was getting somewhat beyond the provisions of Article 381 by injecting into the case the wishes of the district attorney's office when he said to the jury: "Don't come in here with any quali-

---

1. Counsel for defendants objected to this statement, but their objection was overruled by the court.

fied verdict. We don't want it." It is elementary that the personal desires of the district attorney's office with reference to any type of verdict should not be injected into a criminal case. The jury should return a verdict based on the evidence and the law. The district attorney can always ask the jury to return a capital verdict on the evidence adduced, but the personal desires of the district attorney's office should not be considered by the jury in arriving at a verdict.

■■ We do not mean thát this argument necessarily constituted a reversible error in the instant case. Under the jurisprudence of this court, before a verdict approved by the judge is set aside on the ground of improper argument of such a nature as this, this court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Ailes, 133 La. 563, 63 So. 172; State v. Shoemake, 143 La. 65, 78 So. 240; State v. Davis, 178 La. 203, 151 So. 78. We concede that this is often very difficult to do. However, we do think that the remarks in the instant case were improper and out of place, and that the trial judge upon objection by counsel for the defendants should have instructed the jury to disregard them. The judge did not, however, give such instructions, which, if given at the proper time, would have nullified the possibly prejudicial effect of such an improper statement. State v. Brown, 166 La. 43, 116 So. 588; State v. Dowdy, 217 La. 773, 47 So.2d 496, certiorari denied 340 U.S. 856, 71 S:Ct. 75, 95 L.Ed. 627.

■ We have also observed in examining the transcript that in the course of his closing argument counsel for the State addressed the individual jurors by name. Objection was made to this by counsel for the defendants without avail, and counsel for the State continued this practice. It is highly improper for a district attorney to address the individual jurors by name, and this practice should not be permitted by the trial judge on the part of either counsel, whether for the State or for the defendant, in the trial of a criminal case, especially when, as in the instant case, opposing counsel timely objects.

The convictions and sentences are reversed and set aside, and the defendants are granted a new trial.

FOURNET, C. J., absent.