175 So.2d 255 (1965)
247 La. 883
STATE of Louisiana
v.
Gary P. SIMPSON.
No. 47598.
Supreme Court of Louisiana.
May 3, 1965.
Rehearing Denied June 7, 1965.
*256 G. Wray Gill, George Leppert, New Orleans, for appellant.
Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.
HAWTHORNE, Justice.
Gary P. Simpson, indicted for the murder of Gilbert Benitez, a police officer, was found guilty as charged and sentenced to death. A codefendant, Albert Williams, was found guilty without capital punishment and given a life sentence in the state penitentiary. Only Simpson has appealed.
On the morning of August 14, 1963, two Negroes, armed with revolvers, held up a finance company on North Broad Street in New Orleans and forced one of its employees to hand over approximately $400.00. A description of the two men and of the stolen car used in their getaway was broadcast by the police department, and was heard by Officers Benitez and Molinario cruising in a radio-equipped police car. These officers shortly afterwards saw a car fitting the description broadcast, and attempted to stop it. It sped away, and the officers gave chase until the fleeing car ran into a truck and came to a halt. Williams got out of the car and was stopped by Officer Molinario, but Simpson without warning shot Officer Benitez twice, killing him instantly. Both Simpson and Williams shot at Molinario, who returned *257 their fire. Simpson and Williams then fled from the scene on foot.
Officers Anthony Loycano and Charles Cramer, who were on routine patrol nearby, heard over their car radio a description of the incident and of the wanted men. Some three blocks from the scene of the shooting they caught sight of the two defendants. Officer Loycano drew his gun and covered Simpson and Williams, and Officer Cramer proceeded to handcuff them. Police Officers Gondolfo and Saizen joined officers Loycano and Cramer at the scene within a few moments and participated in the arrest and detention of the defendants. Within five minutes of the arrest Sergeant Krasnoff arrived. In reply to his questions Albert Williams admitted that he and Simpson had held up the finance company, and that he had the money obtained in the robbery, but said that Simpson had shot the police officer. Simpson admitted to Krasnoff that he had participated in the robbery, and that he had fired the shot which killed Benitez.[1]

Bills of Exception Nos. 12 and 13.
Counsel for defendant stress and rely principally on these bills of exception for reversal of the conviction. During the course of the trial the court permitted Sergeant Krasnoff over defendants' objection to testify about certain oral admissions or confessions made at the scene of the arrest, and permitted this witness to give the substance of these confessions before the jury. The objections were (1) that the confessions were not free and voluntary and (2) that the same predicate for the admission of the confessions was not laid before the jury as was laid out of the presence of the jury. These objections form the bases of Bills of Exception Nos. 12 and 13.
Before calling Krasnoff as a witness the State called Officers Gondolfo and Loycano, who testified in the presence of the jury, subject to cross-examination, about all of the facts and circumstances from the moment these defendants were arrested up to the arrival of Sergeant Krasnoff about five minutes later. Loycano was one of the arresting officers, and Gondolfo reached the scene almost at once, in time to participate in the arrest.
Before the court permitted the witness Krasnoff to relate the oral admissions or confessions, the jury was properly retired, and the trial judge heard evidence relating to the admissibility of the confessions. Officer Loycano and Sergeant Krasnoff testified that the defendants' answers to the questions asked by Krasnoff were free and voluntary, that neither of the defendants was threatened, harmed, or intimidated in any way, and that no promise or inducement was given to them leading to the making of these admissions. Both defendants testified before the judge that at the time the confessions were made they were in fear, and that they had been abused, struck, or mistreated at the scene of the arrest and threatened with a gun. The judge also heard the State's witnesses, Cramer and Gondolfo, who were called to rebut the defendants' testimony. The former was an arresting officer, and the latter arrived a few minutes after the apprehension of the defendants. Both officers were present when the confessions to Krasnoff were made, and both testified emphatically that the defendants were not harmed, mistreated, or threatened in any way.
The trial judge accepted the testimony of the police officers and ruled the confessions voluntary and therefore admissible. In his per curiam he tells us that he did not believe the defendants' testimony as to ill treatment by the officers at the scene of the arrest. His ruling in this respect is fully justified by the record, and we are in complete accord with his *258 holding that the confessions were affirmatively shown by the State to be free and voluntary and not made under the influence of fear, duress, threats, promises, etc. La. Code Crim.Proc. Art. 451; Art. 1, Sec. 11, La.Const. of 1921.
After the predicate for the admission of these confessions had been laid out of the presence of the jury, the jury was returned, and the State called Sergeant Krasnoff. After testifying that the two defendants were not harmed, threatened, or mistreated in any way and also that their statements made in reply to his questions were their own free and voluntary acts, Krasnoff told the jury that both defendants had admitted the robbery and had said that Simpson fired the shot which killed Officer Benitez.
In the recent case of State v. White, 247 La. 19, 169 So.2d 894, this court discussed the respective functions of the judge and the jury where a confession is sought to be introduced in evidence by the State and is found to be admissible and is introduced. In that case the orthodox or Wigmore rule was approved by this court:
"Whether [confessions are] voluntarily made or not, we hold, is a question of law, to be determined by the Court from the facts, as a condition precedent to their admission. Having been declared competent and admissible, they are before the jury for consideration. The jury have no authority to reject them as incompetent. But the jury are the sole judges of the truth and weight to be given confessions, as they are of any other fact. In weighing the confessions, the jury must take into consideration all the circumstances surrounding them, and under which they were made, including those under which the Court declared, as matter of law, they were voluntary. In weighing confessions, the jury necessarily consider those facts upon which their admissibility, as having been voluntarily made, depends. * * * The Court passes upon the facts merely for the purpose of determining their competency and admissibility. The jury pass upon the same facts, and in connection with other facts, if there are other facts, in determining whether the confessions are true, and entitled to any, and how much weight. * * *"
See also State v. Doiron, 150 La. 550, 90 So. 920.
In the instant case it is evident that the jury had all the facts and circumstances from the moment of arrest to the time the confessions were made by the defendants, a period of some five minutes. The jury heard no testimony of any threats to or mistreatment of these defendants. Consequently before that body there was nothing for the State to rebut after it had adduced testimony in the presence of the jury that the confessions were made voluntarily.
Under the facts of this case we are of the view that since the jury had the benefit of all the facts and circumstances surrounding the making of the confessions together with testimony that the confessions were voluntarily made, it had evidence to enable it to determine the weight and credibility to be given these confessions.

Bill of Exception No. 24.
After the State had completed its closing argument in the instant case and before the jury was retired, counsel for defendants attempted to address the court, but the court refused to permit him to do so in the belief that counsel was attempting to make a rebuttal argument which he is not permitted to do under the law. Counsel for the State shared the judge's view, and objected. Defense counsel, however, informed the judge that he was trying to make an objection. The court then ordered the jury retired, and during its absence counsel stated that he would like to object to the statements in the State's closing argument to the jury that "this defendant did fire the second shot" and that "the faith of over 2000 people depend on your verdict". On the basis of these circumstances counsel for defendants requested and was denied a mistrial.
*259 Because counsel made it clear after addressing the court that he wished only to make an objection, counsel for the State should not have objected, and the judge should have permitted the defendants' objection to be made in the presence of the jury; but we do not find this reversible error.
We are informed in the judge's per curiam that the objection which counsel sought to make in the presence of the jury was not made until after the State had completed its closing argument. Under these circumstances it is doubtful that the objection was timely under the holding of this court in State v. Blankenship, 231 La. 993, 93 So.2d 533, and State v. Eyer, 237 La. 45, 110 So.2d 521. In State v. Eyer this court said: "It is a generally recognized rule that the prosecuting attorney should be interrupted during his final summation to the jury at the moment he makes the statement defense counsel feels is improper or does some act he feels is objectionable." Had counsel for defendants in the instant case interrupted the assistant district attorney at the time the statements were made for the purpose of making his objection, the jury would have been present and would have heard the objection. In the Blankenship case the objection was made at the conclusion of the opening statement of the district attorney and not at the moment the allegedly objectionable remark was spoken. In that case we said: "Since the remark was not objected to when it was made, and the judge was not requested at any time to instruct the jury to disregard it, we do not believe that there was error in the court's refusal to order a mistrial."
Even if the objection in the instant case had been timely and had been made in the presence of the jury, counsel would not have been entitled to a mistrial. It is well settled that this court will not set aside a verdict because of improper remarks by the judge or the district attorney unless the court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Augusta, 199 La. 896, 7 So.2d 177; State v. Jackson, 227 La. 642, 80 So.2d 105, and authorities cited. We do not think the remarks of the assistant district attorney here were prejudicial. In any event, we are certainly not convinced that the jury was influenced by them and that they contributed to the verdict.

Bill of Exception No. 20.
Defense counsel in argument before the jury said that the assistant district attorney in his opening statement had referred to written confessions in the State's possession. The opening statement, made part of the bill, contained no mention of written confessions (counsel now concedes that he was mistaken in saying that the State had referred to written confessions in that statement). The judge properly instructed counsel not to pursue that line of argument, for under R.S. 15:381 counsel in arguing cases to the jury must confine themselves to matters as to which evidence has been received. Counsel, however, persisted in this argument after being told twice by the court that he could not do so. Upon his third attempt to pursue the subject the judge warned him that he would be put in jail if he continued an argument that he knew was improper.
It is counsel's contention that the remark of the trial judge directed to him was prejudicial to the defendants' case. In support of this contention he cites the case of Kraft v. United States, 238 F.2d 794 (C.C.A.8th 1956), in which the federal Court of Appeals gave full recognition to the following rule set out in 23 C.J.S. Criminal Law § 989, p. 1008:
"* * * [a] remark or conduct by the judge conveying an unwarranted reprimand, or a severe criticism on the methods of, or discrimination against, accused's counsel, or an attack upon the motives of counsel with respect to particular conduct during the trial * * * is improper."
*260 Neither the cited case nor the rule relied on is applicable here, because there was impropriety in the conduct of defense counsel and the judge's reprimand was warranted. It is the duty of the trial judge to control the argument of counsel pursuant to law, and when defense counsel here persisted as he did after a clear admonition to discontinue the line of argument, the trial judge was justified in threatening to place him in jail.
Although the admonition was made in the presence of the jury, we are not convinced that the jury was influenced by it or that it contributed to the verdict. Therefore, even if it had been improper, it would not have been reversible error. See State v. Augusta, supra; State v. Jackson, supra, and authorities cited.

Bill of Exception No. 4.
Bill of Exception No. 4 was taken to the overruling of a motion to quash the indictment. In this motion the allegations are made that there has been discrimination against Negroes in the selection of grand and petit juries in Orleans Parish for many years; that the arrest made in this case was illegal in its incipiency; that the accused were not taken before a committing magistrate by the arresting officers; that they were not advised of their right to counsel and afforded an opportunity to have counsel before any statements or admissions were elicited from them; and that the short form of indictment under which defendants were charged with murder is unconstitutional.
In brief filed in this court counsel do not point out how the trial judge committed error in overruling this motion, and do not make any argument or cite any authorities in support of the allegations of the motion.
The allegations of discrimination in selecting juries in Orleans Parish made in this motion present the same issues considered by this court in State v. Barksdale (January, 1965), 247 La. 198, 170 So.2d 374. In that case we found no proof of systematic discrimination in Orleans Parish against members of the Negro race; and that decision is controlling here.
The allegation that the arrest was illegal in its incipiency is without merit. From the facts which we have set out above it is obvious that there was reasonable cause for the arrest under R.S. 15:60. Moreover we are not prepared to hold that the invalidity of arrest can be raised in a motion to quash a subsequent valid indictment. State v. Green, 244 La. 80, 150 So.2d 571, and authorities cited.
In the very recent case of State v. Moody (March, 1965), La., 173 So.2d 195, we said again, as we have said many times before, that the short form indictment for murder is not unconstitutional for causes such as are alleged in the motion in the instant case.
The fact that the admissions or statements, found to be voluntary and made by the defendants within five minutes of their arrest, were given without the benefit of counsel and the fact that the accused were not taken before a committing magistrate afford no legal ground under the law of this state for the quashing of a subsequent indictment.
Moreover, the trial judge in his per curiam (transcript, pp. 117-140) answered properly and correctly all of the allegations raised in the motion to quash, and we do not propose to discuss them any further.

Bill of Exception No. 6.
This bill was taken to the refusal of the judge to sustain a challenge for cause of a prospective juror on the ground that he had a brother-in-law who was a law enforcement officer in another parish.[2] The juror answered under oath that his relationship with a law enforcement officer *261 would not "make any difference", and under these circumstances we cannot say that the judge abused the discretion vested in him to grant or refuse the challenge for cause. It is well settled that the judge has discretion in passing upon the qualifications of jurors, and his rulings on such matters will not be disturbed by this court unless error is manifest. R.S. 15:345; State v. Chandler, 178 La. 7, 150 So. 386, and authorities cited; State v. Brazile, 229 La. 600, 86 So.2d 208; State v. Weston, 232 La. 766, 95 So.2d 305.
Moreover, in the instant case appellant did not exhaust his peremptory challenges before completion of the jury and therefore has no cause for complaint. R.S. 15:353; see State v. Henry, 197 La. 999, 3 So.2d 104.

Bills of Exception Nos. 15, 16, and 17.
The defendant Albert Williams called several character witnesses to elicit from them that he bore the general reputation among people who knew him of being peaceful and quiet. Over objection of counsel for the accused the court permitted the State on cross-examination to ask these witnesses whether they had any knowledge of specified arrests of Williams for specified offenses.
It is well settled in the jurisprudence that where a witness for the defendant testifies as to his good character and reputation, the witness may be questioned as to particular facts and as to previous arrests of the accused on whose behalf he is testifying. State v. Powell, 213 La. 811, 35 So.2d 741; see State v. Thornhill, 188 La. 762, 178 So. 343.

Bills of Exception Nos. 21 and 22.
During argument to the jury defense counsel sought to inject into the case a racial issue and to describe the horrors of execution. Upon objection of the State the court refused to permit counsel to continue along these lines, and these bills were reserved to the rulings.
The rulings are correct, for in both instances counsel's argument was improper. R.S. 15:381 clearly provides that counsel in arguing to the jury must refrain from any appeal to prejudice and must confine themselves to matters as to which evidence has been received or of which judicial cognizance has been taken and to the law applicable to the evidence.

Bill of Exception No. 23.
During closing argument an assistant district attorney stated: "According to the testimony of George Creath and that is no contradiction, that the first shot hit officer Benitez." Counsel requested a mistrial, which was denied.
It is counsel's contention that the assistant district attorney's use of the words "no contradiction" impliedly called attention to the fact that the accused had not taken the stand in their own behalf. As we view the matter, no inference could reasonably be drawn that the assistant district attorney's words were an allusion to defendants' failure to take the stand. Moreover, the language used in the instant case is in effect the same as that used in State v. Bentley, 219 La. 893, 54 So.2d 137, which this court found unobjectionable. See also State v. Dallao, 187 La. 392, 175 So. 4; State v. Bickham, 239 La. 1094, 121 So.2d 207.
During the trial other bills of exception were reserved and perfected. In brief filed here counsel do not attempt to inform this court of the nature of these other bills, nor do they make any argument that they have merit for any specified reason, nor do they cite any supporting law. Under these circumstances we do not propose to, and will not, discuss these bills. Since this is a capital case, however, a careful examination of these particular bills has been made, and they are found to be without substance.
*262 The conviction and sentence are affirmed.
McCALEB, J., dissents as to the ruling on Bill No. 13 and assigns written reasons.
McCALEB, Justice (dissenting in part).
While I fully agree that the judge did not err in ruling the confessions of defendant admissible, as they were shown to be free and voluntary by the preponderating evidence of four state witnesses testifying out of the presence of the jury, it is my view that reversible error was committed when the State failed to produce substantially the same evidence before the jury on its case in chief so that the jury could properly consider and evaluate all the circumstances as related by those who were present at the time the confessions were made. Obviously, the proffer of the evidence of only one officer, to whom the confessions were made, did not satisfy the law's requirement that the members of the jury, as judges of the truth and weight to be given the confessions, are entitled to hear all evidence touching upon the making of the statements and particularly so when the statements were made during part of a five-minute interval after defendant had been captured and was being held in custody of the five officers present. For, in the absence of the evidence of the arresting officers, who were present at the time and just before the confessions were made, the jury was unquestionably without knowledge of all the facts and circumstances which prompted the defendant to confess, and under which the court had declared, as a matter of law, that his statements were voluntary.
It will not do, in my opinion, to deduce that, because all of these officers had testified in the presence of the jury, either before or after the confessions were received in evidence, and were subject to cross-examination, this was sufficient to satisfy the demand of the law that the circumstances under which a confession is given are to be presented to the jury as well as the judge. Defense counsel were not required to cross-examine these state witnesses anent any confession about which they had not spoken in their direct examination before the jury. On the contrary, the burden was on the State to show that the confessions were voluntary, not only by laying a predicate for their admission but also by presenting this evidence to the jury so that it might determine the weight to be given to the statements.[1]
The fact that the crime was heinous and dastardly and defendant's guilt evident furnishes no basis for relaxing the established legal rules concerning the use of confessions against those on trial. Indeed, in view of the circumstances of the case culminating in res gestae confessions within five minutes of the arrest, it appears to me that full and adequate protection of the law was denied defendant by the failure of the State to reveal to the jury, by its own available evidence, all of the facts surrounding the giving of his statements.
I therefore respectfully dissent as to the ruling of Bill No. 13 and concur in the majority view respecting all other bills.
NOTES
[1] A 38-caliber revolver containing six empty shell casings was found on Simpson. There was subsequently found concealed in Williams' clothing a similar revolver with five live rounds and one spent round. Williams had approximately $400.00 on his person.
[2] This juror was challenged peremptorily and did not serve.
[1] This Court in State v. Doiron, 150 La. 550, 90 So. 920 (1922) had the following to say concerning the right of the accused to have the jury hear all the facts and circumstances surrounding the making of a confessionviz.: "* * * But where he (the judge) does determine that it is admissible, the accused is entitled to have all the circumstances go before the jury as a preliminary matter, for they have the right to determine the weight of all evidence, and to say whether statements, alleged to have been voluntarily made, were in fact so made, and, if not, to disregard them. What is done out of the presence of the jury in a criminal trial, is as if it had not taken place at all. Wharton's Crim.Ev. (10th Ed.) vol. 2, pp. 1422-1425, § 689a, 689b." (Parenthesis mine).