194 So.2d 720

**STATE of Louisiana**

**v.**

**Douglas B. DENNIS.**

No. 48308.

Jan. 16, 1967.

Rehearing Denied Feb. 20, 1967.

Leon A. Picou, Jr., St. Francisville, William F. Kline, Clinton, William H. Cooper, Jr., Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Richard Kilbourne, Dist. Atty., Fred C. Jackson, Asst. Dist. Atty., for appellee.

HAMLIN, Justice:

Defendant appeals to this Court from his conviction and sentence to death for the murder of Robert Lee George. LSA–R.S. 14:30.)

An indictment charging the defendant, an inmate of the Louisiana State Penitentiary, Angola, Louisiana, with the murder of another inmate of the penitentiary was filed on May 7, 1965. Defendant was arraigned on May 14, 1965. The Minutes of the Court recite:

"At this time the accused being in open Court, unaccompanied by Counsel, the Court explained to him the nature of the charge and advised him of his right to

counsel. The accused stated that he would like to consult counsel before arraignment, but could not afford to pay for a lawyer, and asked that the Court appoint an attorney to advise him. The Court then appointed Honorable Leon A. Picou with the assistance of David French and William Cooper, Jr., of the Baton Rouge Bar to advise the accused before arraignment. After consultation with counsel the accused returned into open Court, was formally arraigned and plead not guilty with reservation to withdraw plea. Pleadings to be filed May 28, 1965 and argued on June 4th, 1965. This matter was assigned for trial on June 14, 1965 at 9:00 a. m."

On June 10, 1965, David L. French filed a motion to withdraw as counsel, alleging that he was then employed in the capacity of Special Counsel to the Attorney General of the State of Louisiana. His motion was granted on June 10, 1965.

On June 11, 1965, motions for continuance were filed by both William H. Cooper, Jr., and Leon A. Picou, Jr. Cooper alleged that he was a Member of the U. S. Air Force Reserve and had been called to active duty for training commencing on June 12, 1965. He further alleged that he had done virtually all of the investigation on behalf of the accused and had made numerous trips to Angola for that purpose. Picou, in his motion, alleged in part:

"Mover shows that due to unfortunate and unpredictable events, both David French and Wm. Cooper will be unavailable to assist him in the defense of this case, and they having conducted the investigation, mover is not prepared to go [to] trial June 14, 1965.

"Mover shows that, in addition to the aforementioned murder case, he has been appointed as counsel to defendant, in 'State vs. Isiah Hawkins', Docket No. 6526–A, of this honorable court, and also appointed to defend Mullen, in 'State vs. Patrick Mullen', Docket No. 6528–A, both charged with independent and different murders.

"Petitioner shows that all three of the above murder cases in which he has been appointed to defend, plus a fourth murder case, 'State vs. Edw. Johnson', Docket No. 6594–A, which case is different and independent from the aforementioned three, are all scheduled for jury trial June 14, 1965.

"Mover shows that it would be impossible for the court to try all four murder cases on June 14, 1965, or within the week of June 14th thru June 18, 1965.

"Petitioner alleges on information and belief that the State contends there are some approximately 50 witnesses to the alleged murder.

"Mover further shows that defendant Dennis is presently serving a life sen-

tence in the La. State Penitentiary for murder and 'isn't going anywhere.'

"WHEREFORE, MOVER PRAYS that the State of La., thru the District Attorney, show cause at a time and place to be fixed by this honorable court why a continuation of at least three (3) weeks should not be granted herein."

On June 11, 1965, extensive argument was heard on the motions for continuance. The trial court denied the motions, and Bill of Exceptions No. 2 was reserved.[1]

Herein, counsel for defendant argue that the trial judge's denial of the motions for continuance was arbitrary, effectively denying defendant his right to counsel, and was an abuse of his discretion. They further argue that Picou relied heavily on French and Cooper and was denied their presence at trial. They urge that the State in all fairness could have waited several weeks to try the case.

The testimony of record reflects that Picou was not alone in the defense of this prosecution. On June 11, 1965, he spoke with William F. Kline, Jr., an attorney from Clinton, Louisiana, East Feliciana Parish, with respect to Kline assisting him, and Kline commenced working on the case on June 14, 1965. The record also reflects that Picou is an able lawyer, schooled in criminal law, and experienced in the trial of capital cases.

■ LSA-R.S. 15:320 provides that the granting or refusing of any continuance is within the sound discretion of the trial judge. The jurisprudence is legion to the effect that his ruling will not be disturbed where he has acted neither arbitrarily nor unreasonably. State v. Montgomery, 248 La. 713, 181 So.2d 756.

■ We find no abuse of discretion on the part of the trial judge. His Per Curiam to Bill of Exceptions No. 2 sets forth fully his reasons for denying the motions for continuance; we conclude that they were justifiable. The per curiam recites in part:

"Neither of these fine young attorneys [French and Cooper] were qualified to serve as counsel on a capital case and were originally appointed along with Mr. Leon A. Picou, Jr., at his request, to assist him in the investigation of the case and interviewing prospective witnesses. The full understanding was that Mr. Picou was the court appointed counsel —chief counsel—and that all of the work of these two young attorneys was at his guidance and instruction and to give them defensive trial experience.

"This Court has personal knowledge of Mr. Picou's trial ability and his great knowledge of experience and was well satisfied that he was well prepared for the defense of this accused. The record is

1. Bill of Exceptions No. 1, which was taken to the overruling of defendant's motion to have the State furnish certain particulars, has been abandoned.

replete and speaks for itself that the accused was adequately defended, received a fair impartial trial and there was a prepared defense."

Bill of Exceptions No. 2 is without merit.

Bill of Exceptions No. 3 has been abandoned.

Bills of Exceptions Nos. 4, 6, 12 and 16 will be discussed jointly.

Bill of Exceptions No. 4 was reserved to the trial judge's overruling defendant's motion for a continuance based upon the absence of prison inmate witnesses who were placed under subpoena to be brought from the penitentiary to the courthouse before the trial.

Bill of Exceptions No. 6 was reserved to the trial judge's refusal of a request by counsel for the defendant that approximately twelve prospective convict witnesses be brought from the penitentiary to the courthouse at St. Francisville, a distance of approximately twenty-five miles, for the purpose of interview.

Bill of Exceptions No. 12 was reserved when the trial judge, June 15, 1965, refused to issue instanter subpoenas for approximately twelve penitentiary inmates whose presence was deemed necessary by counsel for the defendant.

Bill of Exceptions No. 16 was reserved to the refusal of the trial judge to grant a continuance because of the sheriff's failure

to have available several prison inmate witnesses for which the court had granted instanter subpoenas.

Counsel for defendant contend that the rulings of the trial judge failing to grant continuances were in violation of the rights of the accused and constituted reversible error. Counsel further contend that they were denied compulsory process by the lower court in such a manner as to prejudice the rights of the defendant to a fair trial.

The trial judge's Per Curiams to Bills of Exceptions Nos. 4, 6, 12 and 16, and the testimony attached to the bills, disclose that defendant's trial involved a security risk and demanded protection for the court and general vicinity in which it was held.

The testimony reflects that counsel for defendant requested that subpoenas issue for the production of penitentiary inmates very early in the morning, June 14 and 15, 1965, in order that they might be interviewed by counsel. The testimony also reflects that Deputy Sheriff W. M. Daniel, West Feliciana Parish, normally telephoned the proper authorities at the penitentiary and informed them as to which inmates were needed as witnesses for trials being held, and the inmates were then held on a stand-by basis.

In the instant prosecution, a decision was made by Deputy Daniel not to bring the prospective witnesses in to St. Francisville until the jury was completed or about to

be completed. He consulted with the Assistant District Attorney, Fred Jackson, and he was in accord with Daniel's plan. The rulings of the trial judge indicate that he agreed to the plan.

In his Per Curiam to Bills of Exceptions Nos. 4, 6 and 10, the trial judge explained the security risk involved as follows:

"Some 15 prison inmates had been subpoenaed by the defense for the morning of the trial but being considered a 'security risk' by the sheriff, the prison authorities decided to withhold sending of the inmate witnesses until needed for the trial. Deputy Sheriff Daniel testified such was his recommendations because of the problem of custodial supervision and because from his experience two or three days are required to draw a jury in a capital case. No authority was given this Court to require the presence of prison inmate witnesses prior to their being needed as witnesses. Especially where the professed purpose was to be made available for interview by the attorneys.

"* * *

"The security facilities at the parish court house are meager. There is no jail at or adjacent except for a barred witness room. The presence of any sizeable number of prison inmates presents an escape hazard and a safety risk to the community. In such instances where such witnesses are made available for testifying they are confined in a trailer, locked up on the court house lawn or immediately adjacent thereto."

■ In a criminal case, each side has the right to compulsory process for obtaining its witnesses. LSA–R.S. 15:144. The right to compulsory process is a right to demand subpoenas for the witnesses and a right to have those subpoenas served. LSA–R.S. 15:145. "While the safety of society requires the expeditious trial of persons charged with violating the criminal laws, at the same time justice requires that such persons shall have a reasonable time within which to procure the attendance of their witnesses. It is the constitutional and statutory right of a person charged with a criminal offense to have compulsory process in obtaining witnesses in his behalf. Constitution 1921, Art. 1, sec. 9, Code Crim. Proced., Art. 144 et seq." State v. Pugh, 194 La. 269, 193 So. 643.

Nothing in this record discloses that defendant was deprived of the testimony of any witness which his counsel desired subpoenaed. There is no showing that the desired witnesses were not eventually produced, nor that their production at the time thought to be safe by Deputy Sheriff Daniel was prejudicial to defendant's case. There is also no showing made that defendant suffered any deprivation of constitutional rights guaranteed him by the State and Federal Constitutions.

■ Under the facts and circumstances connected with Bills of Exceptions Nos. 4, 6, 12 and 16, we do not find that defendant suffered any prejudice by the trial judge's rulings. LSA–R.S. 15:557. A review of the entire record discloses that the trial judge was correct in holding that the motions for a continuance were prematurely filed. The record also reflects that the State was willing to grant defendant's counsel the opportunity to personally interrogate defendant's witnesses after the jury had been drawn and the actual trial commenced. There is no showing of an abuse of discretion on the part of the trial judge. Cf. State v. Sinigal, 138 La. 469, 70 So. 478.

Bills of Exceptions Nos. 4, 6, 12 and 16 are without merit.

Bills of Exceptions Nos. 5, 7, 8 and 9 have been abandoned.

■ Bill of Exceptions No. 10 was reserved when the trial court overruled the objection of defense counsel to defendant's appearance in prisoner garb, handcuffs and leg-irons before the jury venire.

Counsel for defendant contend that he was denied the cloak of the presumption of innocence, part and parcel of his absolute right to a fair trial under both the Louisiana and Federal Constitutions.

Our rulings with respect to Bills of Exceptions Nos. 4, 6, 12 and 16, supra, adequately answer the contentions of defense counsel. We also agree with the following statement of the trial judge in his Per Curiam to Bills of Exceptions Nos. 4, 6 and 10:

"No prejudice to the accused rights in appearing in shackles and handcuffs was shown. This was a prison inmate case and the deputy testified the handcuffs and shackles was deemed necessary as policy of their office for security reasons."

The record shows that defendant is a vigorous man of twenty-eight or twenty-nine years of age, about six feet tall, and weighing approximately two hundred and twenty to two hundred and twenty-five pounds.

Bill of Exceptions No. 10 is without merit.

Bills of Exceptions Nos. 11, 13, 14 and 15 have been abandoned.

Bill of Exceptions No. 17 was reserved to the trial court's overruling of defense counsel's objection to the following statements in the closing arguments of the State:

" * * * But gentlemen I am here to tell you tonight, if you can't come in here and return the verdict guilty as charged in this case with the evidence you have, the type of ruthless, brutal crime that you have here tonight in this case, you might as well go ahead and give this fellow a medal and acquit him.

" * . * *

"As I said, you might as well give him a medal by acquitting him and turning

him loose for his next victim, it might even be you because he will be out of there one day; it might be me because I can see that he is a man who takes an axe to people who get in his way. * * "

Counsel for the defendant contend that the State did not have the right to make the jury think that it was its duty to convict rather than to weigh the evidence and render a fair and impartial verdict. They argue that the instructions of the trial judge to the jury to disregard any comments in the arguments of the lawyers not substantiated by the evidence or testimony did not cure the matter. They further argue that the trial court erred in not striking the above language.

LSA–R.S. 15:381 provides:

"Counsel may argue to the jury both the law and the evidence of the case, but must confine themselves to matters as to which evidence has been received, or of which judicial cognizance is taken, and to the law applicable to the evidence; and counsel shall refrain from any appeal to prejudice."

■ Under the jurisprudence of this Court, before a verdict approved by the judge is set aside on the ground of improper argument, this Court must be thoroughly convinced that the jury was influenced by the remarks, and that they contributed to the verdict. State v. Jackson, 227 La. 642, 80 So.2d 105.

No showing has been made that the jury was influenced by the remarks of the State or that they contributed to the verdict. In his Per Curiam to Bill of Exceptions No. 17, the trial judge states:

"Great leeway was granted both state and defense in their arguments. Further the Court in its instructions advised the jury that they were to disregard any comments in the arguments of the lawyers not substantiated by evidence or testimony and proving nothing."

■ We conclude, therefore, that defendant suffered no prejudice by the District Attorney's closing argument and that no reversible error was committed. See, State v. Scott, 243 La. 1, 141 So.2d 389; State v. Robinson, 221 La. 19, 58 So. 2d 408, cert. denied, 344 U.S. 904, 73 S.Ct. 285, 97 L.Ed. 699; State v. Stahl, 236 La. 362, 107 So.2d 670.

Bill of Exceptions No. 17 is without merit.

Bill of Exceptions No. 18 was reserved to the trial court's overruling defendant's motion for a new trial.

The motion for a new trial urges the same points covered by the bills of exceptions ruled upon herein, as well as the points urged in the abandoned bills of exceptions. Nothing new has been presented to this Court for consideration.

Bill of Exceptions No. 18 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.

194 So.2d 726