NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1210

STATE OF LOUISIANA

VERSUS

BRIAN K. MALVEAUX

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 09K5344C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

AFFIRMED.

Hon. James David Caldwell
Attorney General
P. O. Box 94005
Baton Rouge, LA 70804-9005
(225) 326-6200
COUNSEL FOR PLAINTIFF APPELLEE:
    State of Louisiana

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT APPELLANT:**
**Brian K. Malveaux**

**Terri R. Lacy**
**Assistant Attorney General**
**P. O. Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6200**
**COUNSEL FOR PLAINTIFF APPELLEE:**
**State of Louisiana**

**Brian K. Malveaux**
**Louisiana State Penitentiary**
**Hic 1**
**Angola, LA 70712**
**COUNSEL FOR DEFENDANT APPELLANT:**
**Brian K. Malveaux**

**SAUNDERS, Judge**.

On January 26, 2010, the Defendant, Brian K. Malveaux, was indicted with aggravated rape, a violation of La.R.S. 14:42.[1] Following a jury trial, the Defendant was found guilty as charged on July 27, 2011. The Defendant was sentenced on August 18, 2011, to serve life in prison at hard labor, without benefit of probation, parole, or suspension of sentence.

The Defendant is now before this court on appeal, asserting that the trial court erred in denying his motions for mistrial and objections to the State's prejudicial and inflammatory closing arguments. We affirm the Defendant's conviction and sentence.

## FACTS:

The Defendant broke into the home of the eighty-two-year-old victim and sexually assaulted her. The Defendant confessed to entering the victim's home and "doing it" with the victim. The victim testified that the Defendant broke into her home and sexually assaulted her while armed with a knife. The DNA profile of sperm from the victim's vaginal swab matched the Defendant's DNA profile. Afterward, the Defendant made the victim bathe in bleach water. He then put the bed linens from the victim's bed in the water after adding more bleach. Before leaving the victim's home, he instructed her not to call the police.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. The record on appeal indicates that there are no errors patent.

---

[1] The Defendant was also charged with home invasion and simple robbery which were severed from the aggravated rape charge prior to trial. After sentencing for the Defendant's aggravated rape conviction, the State dismissed these charges.

## ASSIGNMENT OF ERROR:

In this assignment of error, the Defendant argues that the State's closing argument was improper, because it appealed to the fear, sympathy, and prejudice of the jury. As such, the Defendant contends that the trial court erred in denying his motions for mistrial.

In support of his argument, the Defendant refers to La.Code Crim.P. art. 774, which provides that:

> The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
>
> The argument shall not appeal to prejudice.
>
> The state's rebuttal shall be confined to answering the argument of the defendant.

La.Code Crim.P. art. 774.

In closing argument, defense counsel discussed the duties of the jury and jury instructions. Defense counsel stated:

> [O]ne of the instructions that the Judge will give you is that you are not supposed to be sympathetic, or feel sorry, or have certain type of emotions involved in this case. Because we are all humans, it's easy to say that, because we're all humans it's natural, especially in this type of case.
>
>     ….
>
> Again, the Judge will instruct you about sympathy in this type of case.

On rebuttal, the State argued:

> Ladies and gentlemen, I finally heard what I thought I was going to hear today . . . It just bothers me that he just stood up here and mentioned that word. It's that word that sometimes I understand has a place in our society, but in a case like this it makes no sense to me, and that word is sympathy. He finally dropped the sympathy word. Well, ladies and gentlemen, he did want did [sic], and he is what he is, that y'all should feel sympathy for him. Sympathy in a case like this. I've tried thousand [sic] of cases, and I can tell you some of them required sympathy. I haven't been a prosecutor that long. I'm not that hard into prosecuting to think that in some cases juries should administer some sympathy, but in a case like this

2

sympathy should be the last thing on anybody's mind in this courtroom. He didn't show any sympathy to that lady. Who came in here and testified and bored [sic] her soul. There was no sympathy that day, none whatsoever. She begged him. She asked him to stop. He wouldn't stop. He just kept going. She could have used some sympathy ladies and gentlemen, but he wasn't going to give her any sympathy not him. He was just going to keep pouring bleach. He's going to keep trying to rape her. He was going to keep trying to do what criminals do, and that is take advantage of the innocent, that's all it boils down to.

What you saw here today, ladies and gentlemen, this a very brave woman this woman, a very brave woman, and I sometimes wonder, she's 82 years old, and I sometimes wonder about the generation divide in this country. Elder people and younger people, and sometimes it just doesn't make sense. Here's a woman who should be the pillar of the community…. She's always had roots in this community. She lived here her whole life. Never hurt anybody. Never did anything wrong to hurt anybody. This is the type of lady, the type of woman, 82 years old, a grandma, a great grandma. We should be putting her on a pedestal. People like her should be placed on a pedestal not treated like that, not to be a victim of a rape. Not to be raped like that. This is a woman that St. Landry Parish can be proud of, because I can tell you that day after she was brutally raped by that man; after he licked her all over her body; after he tries to put his penis and puts his penis inside of her, he ejaculates and coms all over her. She doesn't say to herself, well, you know what I'm just not going to tell anybody. Of course, this is too embarrassing for me. This is a terrible thing that happened to me, but you know what I'm not going to tell my kids. I'm not going to tell my grand kids [sic]. I'm not going to tell my family. I'm not going to tell the cops. I'm not going to tell anybody. She could have did [sic] it. She could have did [sic] it. Could have did [sic] it. Could have lived with this for the rest of her life, but where would that leave the rest of y'all. Tell me. Where would that leave the rest of the women who live in her neighborhood. The rest of the woman [sic] who live in this parish, and the rest of the women who live in this state who would be subject to him. Could have did [sic] it. Could have not told a soul.

So, ladies and gentlemen, we owe that brave woman a debt of gratitude. We all do. If he's not picked up for this rape, where would he be. Where would he be. Your neighborhood, your neighborhood, who's neighborhood. She did a brave thing that day. She did a brave thing for the people in the parish and the people in her neighborhood. She didn't have to come forward. She didn't enjoy having to sit up there, and having to bear [sic] her soul. She put her head down on her hands and cried. She cries because of the shame that she feels. She didn't even do anything wrong. Didn't do anything wrong that day, but she feels shame. You know why, because she's not a criminal like he is. Victims feel shame. All victims feel shame. Child victims of sexual abuse feel shame. All victims feel shame. For some reason,

3

they think that they put themselves in that position and there's something that they could have done.

Defense counsel objected on the basis that the State was not arguing the evidence but was appealing to the sympathy of the jury and was going "overboard" with it. The objection was overruled. The State continued:

So, that's what you have. That's what you have here, he doesn't deserve anyone's sympathy. He just doesn't. He didn't give her any sympathy that day. He was in control that day, that's the real him. When he gave the statement he says, well, I wasn't in my right mind… He was in his right mind. Drugs and alcohol, he knew exactly what he was doing. He acted exactly how a dangerous rapist acts…. He was in power the whole time. He exerted power over her the whole time and never gave her any sympathy.

Defense counsel objected again, stating that the State's argument was not appropriate rebuttal to his closing argument. The objection was overruled. Later in the State's rebuttal, the prosecutor commented:

Now, I'm not a stupid man, and I don't think any of y'all are stupid. And I can tell you, he's trying to bleach sheets. He's trying to bleach her. He did something to the knife. He either wiped it down, or poured something on it, or he did something to it. This case is not about fingerprints on a knife. If it's about fingerprints on the knife, all Mr. Claiborne had to do was file a motion with the Court ordering us to take fingerprints of the knife. He never did that, and he never did it because he knows that [sic] not an important part of his case. What he does, ladies and gentlemen, as a defense lawyer, he takes that smokescreen shotgun that he's got, and he puts the knife in the smokescreen shotgun, and he fires it at y'all. And he hopes that one of you, or two of you, goes back into that jury room jumps up and screams what about the fingerprints on the knife. Then he knows, then he's got you. He's got you hook, line, and sinker.

Defense counsel objected a final time to what he characterized as personal attacks upon counsel. In overruling the objection, the trial court stated it was the State's argument to the jury.

At the conclusion of the State's rebuttal, defense counsel requested the opportunity to a surrebuttal, and his request was denied. Defense counsel subsequently moved for a mistrial and asked to state his reasons. A discussion was

4

then held off the record. Afterwards, the trial court began instructing the jury. After the jury went into deliberation, defense counsel re-urged "the various motions for mistrial" made throughout the trial, stating:

> The primary purpose for my motion for mistrial, in the particular case, is that offense counsel in his rebuttal to my close went extremely overboard, and it was not a direct rebuttal to what defense indicated. And defense also requested a surrebuttal, which the Court denied. One of the things that State continued to say to the jury was send a message, send a message, send a message. It's not the jury's purpose or duty to send a message. It's the jury's duty to make a decision based upon the evidence or the lack of evidence that was presented in this particular [sic]. We think that was an excessive appeal to sympathy. I could have made more objections during his closing, but I decided not to, because it seems that the Court was denying those motions. But once again, Judge, we feel in the interest of justice, that mistrial should be granted in this particular case.

Counsel for the State responded:

> Judge, it was my understanding, and my interpretation some of the things that defense counsel said during his closing argument. One of which was he was arguing against Aggravated Rape, and he was arguing against the life sentence. And he was arguing in favor of sympathy, and against a life sentence. And my point was just to explain to the jury those reasons as to why a life sentence is applicable in this particular case, and why there should be no other sentence in this case, that's all.

The motion was denied.

On appeal, the Defendant refers this court to several cases in support of his argument. In *State v. Deboue*, 552 So.2d 355, 364 (La.1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 215 (1990), *cert. denied* 498 U.S. 993, 111 S.Ct. 541 (1990), the court stated, "[p]rosecutors should not turn closing argument into a plebiscite on crime by making overt references to community sentiment. *State v. Sugar*, *supra* [408 So.2d 1329 (La.1982)]; *State v. Hayes*, 364 So.2d 923 (La.1978)." In *Deboue*, the court found improper the prosecutor's comment that "'the community is waiting for you to tell them what you're going to do.'" *Id*. At 363. The statement was made during closing arguments in the penalty phase of trial. The

court also found improper the prosecutor's suggestion that the defendants would laugh at the jury if they received sentences of life imprisonment as opposed to the death penalty. *Id*. at 364. The court reasoned, "The argument was not based on any reasonable inference that could be drawn from the evidence and implied, wrongly, that a sentence of life imprisonment is not a serious penalty, or that the jury has somehow not fulfilled its function honorably if it returns such a sentence." *Id*. The court concluded, however, that the remarks were not of such a nature as to require a mistrial under La.Code Crim.P. art. 770. *Id*.

In *State v. Jackson*, 80 So.2d 105, 109 (La.1955), the court reversed the defendant's conviction due to improper comments made in the prosecutor's closing argument when he stated, "'[d]on't come in here with any qualified verdict. We don't want it.'" *Id*. The court found that the State injected into the case the wishes of the district attorney's office. *Id*. The court also observed that the prosecutor addressed the individual jurors by name during closing argument. *Id*.

In opposition, the State refers to *State v. Dennis*, 194 So.2d 720, 725 (La.1967), wherein the prosecutor commented:

> But gentlemen I am here to tell you tonight, if you can't come in here and return the verdict guilty as charged in this case with the evidence you have, the type of ruthless, brutal crime that you have here tonight in this case, you might as well go ahead and give this fellow a medal and acquit him.
>
> As I said, you might as well give him a medal by acquitting him and turning him loose for his next victim, it might even be you because he will be out of there one day; it might be me because I can see that he is a man who takes an axe to people who get in his way.

In that case, the defendant objected, arguing:

> [T]he State did not have the right to make the jury think that it was its duty to convict rather than to weigh the evidence and render a fair and impartial verdict. They argue that the instructions of the trial judge to the jury to disregard any comments in the arguments of the lawyers

not substantiated by the evidence or testimony did not cure the matter.
*Id.*

The supreme court concluded, however, that the defendant suffered no prejudice.
*Id.*

In the instant case, the Defendant argued at trial that the State appealed to the jury's sympathy and encouraged the jury to "send a message." On appeal, the Defendant contends it was improper to have the jurors consider themselves as possible victims, distracting them from the ultimate task and "resulting in a conviction on less than sufficient evidence." Further, the Defendant maintains that at the very least, the trial court should have admonished the prosecutor and instructed the jury to disregard the improper argument; thus, the error was not harmless.

Even if the prosecutor's statements are construed as having appealed to the jury's sympathy, the remarks are not of such a nature as to require a mistrial under La.Code Crim.P. art. 770. *Deboue*, 552 So.2d 355. "[A] verdict will not be overturned on the basis of improper argument unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that the remarks contributed to the verdict." *State v. Johnson*, 93-2092, p. 3 (La.App. 4 Cir. 6/30/94), 639 So.2d 1236, 1238 (citations omitted).

The evidence presented against the Defendant by the State was overwhelming; thus, the State's comments on rebuttal during closing arguments did not likely contribute to the Defendant's guilty verdict. The Defendant confessed to entering the victim's home and "doing it" with the victim. The victim testified that the Defendant broke into her home and sexually assaulted her while armed with a knife. The DNA profile of sperm from the victim's vaginal swab matched the Defendant's DNA profile. Based on this credible and unrefuted

testimony, it is not likely that the State's comments contributed to the Defendant's guilty verdict. Accordingly, we find no merit to this assigned error.

**<u>DECREE</u>:**

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**