269 So.2d 232 (1972)
263 La. 755
STATE of Louisiana
v.
Archie Lee WILLIAMS.
No. 51875.
Supreme Court of Louisiana.
October 26, 1972.
Rehearing Denied December 11, 1972.
*234 D'Amico, Curet & Bush, Louis D. Curet, Bryan E. Bush, Jr., Kizer, Cangelosi, Sanford & Mosely, Roy F. Cangelosi, Jr., Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Frank J. Gremillion, Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
The defendant appeals from a conviction, after a trial by jury, of armed robbery (La.R.S. 14:64), for which he was sentenced to serve forty years at hard labor in the State penitentiary. He relies upon fifteen bills of exceptions to obtain a reversal of the conviction and sentence.
Bill of exceptions No. 1 was reserved to the trial court's denial of the defendant's motion to excuse the jury venire. The motion was made on the grounds that the district attorney, in the presence of the jury, moved to sever the indictment which had charged the defendant along with two others, and to try Archie Williams in a separate trial.
We can find no prejudice to the defendant from the fact that the jury heard the State's motion for a severance. The jury was retired immediately after the motion was made, and they heard no part of the argument thereon. This bill is without merit.
Bill of exceptions No. 2 was reserved when the trial court allowed the indictment to be read to the jury, including the names of the other defendants under the original indictment. The defendant moved for a mistrial which motion was denied by the trial court.
Again, we find that no prejudice to the defendant resulted from the fact that the jurors heard that the defendant was indicted along with two others. Testimony introduced at the trial brought out the fact that the defendant was not the only person involved in the perpetration of the crime charged. This bill is without merit.
Bills of exceptions Nos. 3, 4, 5 and 6 all relate to the defendant's objection to the trail court's admissibility of evidence of the alleged aggravated rape of the victim into the trial. Counsel contends the injection of such testimony in the trial for armed robbery was inflammatory and denied the defendant a fair trial. However, we find the alleged aggravated rape was part of the res gestae. La.R.S. 15:448 provides;
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." (Emphasis mine.)
The general rule is that all that occurs at the time and place and immediately before and after a difficulty is admissible as res gestae.
La.R.S. 15:447 declares "* * * what forms any part of the res gestae is always admissible in evidence." The testimony reveals the alleged aggravated rape of the victim's date took place immediately after the armed robbery was said to have taken place. There is no merit to these bills.
Bill of exceptions No. 7 was taken when the trial judge denied a motion for mistrial, which had been based on grounds a State's witness, Officer Gill, injected hearsay testimony as to what an unnamed informer thought, specifically, that the informer "felt like his life was in danger." Immediately after the Officer made this statement, the trial judge gave the following admonition to the jury:
"The Court: Gentlemen of the jury, you can disregard the last answer, the last statement made by Officer Gill as not being relevant and not being responsive to the question having no weight and no bearing. You must give it no weight and no bearing in your deliberation."
*235 The purpose of Code of Criminal Procedure Article 771 is to deal with situations such as this on which this bill is based. Generally, this Court has held that a verdict should not be set aside on account of an improper, spontaneous, unsolicited remark by a witness. The trial court properly admonished the jury to disregard the statement. This bill has no merit.
Bill of Exceptions No. 8 has not been briefed by the defendant and is therefore considered abandoned.
Bills of exceptions Nos. 9 and 10 concern the admissibility of the defendant's taped recorded confession.[*] The defendant alleges that he gave the tape recorded confession so that the police would stop beating him, and that he signed the waiver of his rights after he gave the tape recorded confession. Herein, defense counsel then argues that the burden of proving the voluntary nature of a confession rests upon the State, and that reasonable doubt exists as to the voluntary nature of the instant confession. He submits that the trial court committed manifest error in denying the motion to suppress.
A reading of the evidence discloses that Detective Ronnie Alford, and Mr. Joe Salard, an investigator employed by the District Attorney both testified that the accused was advised of his constitutional rights and, in fact, signed a printed rights waiver form before he was asked any questions concerning the crime. Further, Mr. Salard also testified that he again advised the accused of his constitutional rights at the beginning of the tape recording and that this advice appeared on the tape itself. Neither do we find anything in the record that the accused made the tape under any type of force or coercion.
In light of the fact that the defendant was given the Miranda warning and there appears beyond a reasonable doubt that the defendant's confession was made freely and voluntarily and not under the influence of fear, duress, intimidation or threats, contrary to La.R.S. 15:451 we find no reversible error. These bills of exceptions Nos. 9 and 10 lack merit.
Bills of Exceptions Nos. 11 and 12 were not argued by the defendant in his brief and are therefore considered abandoned.
Bill of Exceptions No. 13 was taken when the Assistant District Attorney asked Bill Jones, a witness called for the defense:
Q. "Is it not a fact, Bill, that after you testified on Tuesday, somebody called you and talked to you about your testimony?
A. No, sir.
Q. Who talked to you about your testimony Tuesday afternoon?"
Defense contends that it was error for the Assistant District Attorney to assume by his second question that the contrary answer had been given by the witness, in violation of La.R.S. 15:278. Earlier, Jones had given a taped statement which implicated the defendant in the crime. When called to testify as a defense witness, Jones stated that everything he had reported to the police was untrue. The purpose of the State's questioning was clearly to impeach Jones' testimony.
Bill of Exceptions No. 14 was reserved to the trial court's overruling defendant's objection to the state's playing the tape recording of Jones' statement to the arresting officers. The State wanted the tape played to show that, contrary to Jones' testimony, the tape was almost wholly a narrative statement by Jones, and not a programmed "leading-question-affirmative-reply" colloquy as alleged by Jones.
Based on the evidence attached to these bills before this court, we find that under the provisions of La.R.S. 15:487, 488 and *236 493, the law regarding the impeachment of the defense witness was complied with.
Bill of Exceptions No. 15 was reserved by the defendant when the Assistant District Attorney, in his closing argument, stated:
"Now, defense would have you believe thatwell the first thing is, one of the most discouraging things about prosecuting criminal cases is you find yourself doing very little prosecuting and doing a lot more defending. Every criminal I've tried in the past four years I have found that I have had to defend the victim and the Police Department. I have never understood how, in argument, defense counsel are always able to turn the victim into the villain. It always happens. The victim in a rape case, for example, some poor girl is dragged into the bushes and raped. Defense will show you that it is her own fault."
La.Code of Criminal Procedure article 774 states:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."
"The argument shall not appeal to prejudice."
"The state's rebuttal shall be confined to answering the argument of the defendant."
As emphasized in State v. Dennis, 250 La. 125, 194 So.2d 720 (1967), this Court stated, "Under the jurisprudence of this Court, before a verdict approved by the judge is set aside on the ground of improper argument, this Court must be thoroughly convinced that the jury was influenced by the remarks, and that they contributed to the verdict. State v. Jackson, 227 La. 642, 80 So.2d 105."
No showing has been made that the jury was influenced by the remarks of the State or that they contributed to the verdict. As to the defense argument that the trial court gave its tacit approval to the State's comments by overruling the objection, this Court has held that when a defendant avails himself of the lack of the cautionary instruction, by remaining silent and not making a specific request to the trial judge to cure any error that may have been committed, it creates a trap for the unwary judge to the prejudice of the fair and efficient administration of justice. Where the defendant did not make known to the trial judge his desire for such a cautionary instruction and afford him an opportunity to give it, we find no error. State v. Ray, 259 La. 105, 249 So.2d 540 (1971).
As we said most recently in State v. Daniels, 262 La. 475, 263 So.2d 859 (1972), "while we do not condone or encourage such remarks . . . we do not think that it is sufficiently inflammatory and beyond the realm of fair comment on the evidence as to warrant the granting of a new trial." This bill is without merit.
For these reasons, the sentence and conviction are affirmed.
BARHAM, J., dissents with written reasons.
BARHAM, Justice (dissenting).
The defendant Archie Lee Williams and two other persons were charged with aggravated rape as well as with armed robbery, the criminal charge involved in this case. On the morning the cases were called for trial and in the presence of the jury venire from which would be formed the juries to try the cases in that section of court during that week, the State "advised the court" that it had elected to sever in the aggravated rape charge and try the defendant Williams separately for that offense. Counsel for this defendant moved for a discharge of the jury venire because this had occurred in its presence and was prejudicial to him. However, the State has correctly shown that the defendant was *237 not in fact tried under a severed indictment for that charge but went to trial under an indictment for armed robbery. The bill of exceptions reserved in that other proceeding in the trial court cannot properly be a part of this record.
Because the other two defendants pleaded guilty to the armed robbery with which they were charged jointly with Williams in this case, the State had to sever the indictment and try Williams alone on the robbery charge. However, the indictment had not in fact been severed, and there is nothing in the record to indicate a severance. When the court reporter read the only indictment in the record, he included the names of all three persons charged with armed robbery. The jury knew after opening statement that although this defendant was charged with two others for this crime, for some reason he alone would be tried. The defendant timely objected, moved for a mistrial, and reserved Bill of Exceptions No. 2.[*]
In State v. St. Andre, 263 La. 48, 267 So.2d 190, 1972, I concurred when the State had failed to severthat is, to file a separate indictment against the one of several defendants it chose to try alone. There, however, when the clerk read the indictment to the jury, he omitted the names of the other defendants, and I found that this could, under the particular facts of that case, constitute harmless error although it was a violation of a substantial right. Failure to sever is not harmless error in this case, and I am of the opinion that the defendant is entitled to a reversal.
The mandate of the Code of Criminal Procedure is in clear and concise language:
"Art. 704. Severance
"Jointly indicted defendants shall be tried jointly unless:
"(1) The state elects to try them separately; or
"(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance."
"Art. 705. Effects of severance
"When the court has ordered severance of an indictment, the district attorney shall file separate indictments.

"In the case of a grand jury indictment, no further action by the grand jury is required. Severed indictments shall be considered as filed on the date of the filing of the original indictment. Proceedings under the original indictment are not affected by the severance except insofar as they may be inconsistent with some other provision of this Code. The effects of a severance, as stated in this article, apply to severances under Articles 532(3) and 704." (Emphasis supplied.)
These articles demand the filing of separate indictments not only when the defendant moves for and is granted a severance, but also when the State severs voluntarily. The last sentence of Article 705 does not limit the application of the requirements of that article to severances obtained by the defendant; rather, it states that all severances made under the authority of Article 704 are subject to the effects of Article 705. This includes severances made at the election of the State. See Comment (a) of Article 705.
No matter by what method or on whose part a severance is accomplished, it is in fact accomplished only when a separate or a severed indictment is filed. Failure to file a severed indictment is fatal if only one of several defendants jointly charged is to be tried. The indictment is the basis for the entire proceeding from arraignment to verdict and sentence. The original indictment must be in writing (C.Cr.P. Art. 464); if it is amended, the amendment must be in writing (C.Cr.P. Arts. 487 and *238 488), and if it is severed, the severed indictment must be in writing (C.Cr.P. Art. 705). Article 705 does not merely permit the filing of a separate indictment; it orders the filing of a separate indictment when there is to be a severance for purposes of trial. Nothing short of a separate filed written indictment can validly support such a proceeding.
While the error alleged in this bill of exceptions is reversible error, there is another ground for reversal in the case.
Bill of Exceptions No. 14 was reserved to the court's overruling of defendant's objection when the State, during rebuttal, played a tape recording of a statement given before trial by a witness Bill Jones. If this bill of exceptions is reviewed on the restricted basis of looking only to the evidence attached to and made a part of the bill, there has been a denial of defendant's right to full confrontation of a witness. The only testimony attached is that of a police officer which shows that he took a statement from a man named Bill Jones but which does not connect Jones with the trial as a witness or as a defendant. There is also conversation between the court and counsel indicating that Bill Jones had in fact testified previously in the trial. There is also a charge from the court to the jury to consider the taped statement only for the purpose of impeaching Jones's testimony in court "about the manner in which the statement was given". If we do not look to the colloquy between the court and the attorneys as evidenceand the jury did not hear this colloquy, it is obvious that the State offered testimony to the jury in rebuttal by way of a recorded statement which denied the defendant the right to confront a witness. On the face of the bill this is obviously reversible error.
If we consider the colloquy which showed that Jones was a previous witness and that this statement was offered to impeach his testimony, then it is immediately apparent that the State failed to lay the proper foundation for impeaching a witness by a prior inconsistent statement. There is nothing in the bill of exceptions to show that the State confronted the witness with a prior contradictory statement. Since the witness was not on the stand, he obviously was not asked whether he made a statement, not told of the time, place, and circumstances of the statement, not given the opportunity to explain the seemingly contradictory statement and admit or deny that he made such a statement. These exacting requirements of R.S. 15:493 were obviously not complied with. Considering the bill of exceptions in the light that the State was attempting to impeach a witness, the taped statement must be held to be improper rebuttal since the predicate for a prior inconsistent statement to be used for impeachment was not laid. There is no per curiam to explain the deficiencies in the bill, nor has the State exercised its right to supplement the bill.
As I am often persuaded to do, I have looked at the objection in the perspective of the whole record, disregarding the technical requirements for the perfected bill of exceptions. All the evidence is before us, and it is very simple to place this bill with the limited evidence attached in its proper perspective. The result is the samereversible error.
Preliminarily, I believe that when the State's use of the recorded statement in rebuttal is examined in the context of the full record, it must be found to be improper rebuttal, for the recording of this statement should have been played while the witness was on the stand. A recorded statement is, and we have so held, in the nature of a written statement. The proper time for impeachment by a prior written or recorded statement is while the witness is on the stand. An oral statement given to a third party may be introduced in rebuttal for purposes of impeachment.
However, I find the error more serious for another reason. The State called Bill Jones on Tuesday as its witness. He testified against the defendant and admitted *239 having previously given a statement to the police and that his testimony from the witness stand was the same as the previous recorded statement taken from him by the police. On Friday the defense, having apparently learned that the witness would give testimony contradictory to that previously given, called Bill Jones as its own witness. At that time he testified that he had lied both on Tuesday when he testified for the State and in his recorded statement given to the police before trial. He then proceeded to testify to what he called the truth. When the State could not get him to deny making the prior inconsistent statements, it attempted to have him say that his taped statement recorded only his "yes" and "no" answers to queries by the police and that it was not in "narrative" form. On redirect examination, counsel for the defendant explained what "narrative" meant, and then asked the witness whether he actually had given the police in his own words in response to questioning a version of what had occurred on the night of the offense. He admitted that was the way the recorded statement was made.
The State, having failed to get the witness to deny the prior recorded contradictory statement, tried to justify its right to use the recorded statement for impeachment on the basis that he testified it was given in one form (not narrative) and that the playing of the tape would indicate it was in fact given in another form. The court admitted the statement, and so charged the jury, "solely for the purpose of impeaching what Mr. Jones testified to in court about the manner in which the statement was given". (Emphasis supplied.) Jones did not deny, in fact he admitted, that the recorded statement was in narrative form, although he may not have understood the meaning of the word "narrative".
Moreover, whether the statement was in narrative form or not was a totally irrelevant fact. R.S. 15:494 states categorically: "It is not competent to impeach a witness as to collateral facts or irrelevant matter."
Furthermore, the predicate required by R.S. 15:493 had not been laid for impeaching the witness. The witness "distinctly admit[ted] making such statement", and therefore the statement could not be offered for the purposes of impeachment.
Both Bills of Exceptions No. 2 and No. 14 require reversal of this conviction.
I respectfully dissent.
NOTES
[*] Taped confession by defendant, Archie Lee Williams: Record, pages 1270 to 1315 inclusive.
[*] For a discussion of the court's consideration of the 15 perfected bills of exceptions here, see my concurrence in State v. Ross, 263 La. 271, 268 So.2d 222.