STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOSEPH ERNST, DEFENDANT-APPELLANT.

Argued March 7, 1960—Decided June 6, 1960.

[redacted]

*Mr. Joseph De Luca* argued the cause for appellant.

*Mr. Norman Heine,* Camden County Prosecutor, argued the cause for respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant was convicted of murder in the first degree. The jury did not recommend life imprisonment and accordingly the death sentence was imposed. *N. J. S.* 2*A*:113–4. Defendant appeals directly to this court pursuant to *Art.* VI, § 5, *par.* 1 of the *Constitution* and *R. R.* 1:2–1(*c*).

### I.

Defendant contends the verdict was against the weight of the evidence as to the degree of guilt. Specifically he urges the verdict could not properly exceed murder in the second degree.

For some time defendant had been seeing the victim, Joan Connor, age 17. She was a baby sitter for Mr. and Mrs. Lawrence Linden at their home in Camden, New Jersey. At about the beginning of March 1959, apparently in the belief that defendant evidenced an interest in Mrs. Linden, Joan informed defendant she no longer wished to see him. On March 5 defendant appeared at the Linden

home and talked with Joan. An argument developed, and defendant struck Joan on the head with a soda bottle, inflicting an open wound. Defendant was on parole, and fearing a return to confinement at Bordentown, he fled to the home of a friend, Robert E. Lee, in Newark. He sought to have withdrawn the complaint for assault and battery made by Joan's father, and, we gather, was informed by someone that Linden stood in the way of that solution.

On the evening of March 14 defendant and Lee drove to Camden. According to his confessions, defendant's purpose was to kill Joan and Linden. He had dyed his hair a few days before. He carried a .32-calibre revolver. He visited the home of a Mrs. Brennan, a friend and neighbor of his family, and while there stole from her a P-38 automatic and cartridges. Mrs. Brennan testified defendant said his mission was revenge. Defendant test-fired the P-38 automatic in a vacant lot. He pilfered a pair of license plates and attached them to the car. Armed with two weapons, he sought out Joan and Linden. He visited a tavern, where he failed to find Linden by a narrow time margin. He testified that Joan was at the tavern, although witnesses for the State denied she was. At any rate, at about midnight he went to Linden's home and had Lee ring the doorbell and ask for Joan. A young man, who was to baby-sit to permit Joan and Mrs. Linden to go out, responded and called Joan to the front door. As she appeared, defendant moved into view. The evidence is contradictory at this point. At the trial defendant said he sought to touch her head to examine the wound he had inflicted on March 5, whereupon she slapped him and slammed the door. His confession was to the effect that when Joan saw defendant she asked, "What do you want"? and when he replied "You know what I want," she closed the door "real fast." As the door closed, defendant fired the P-38 automatic. Two slugs passed through the door and hit Joan, killing her in a matter of minutes. Defendant immediately returned to Newark where he was apprehended on March 16.

The nub of defendant's contention is that the jury should have found he fired in response to the rebuff to which he testified, without a purpose or prior plan to murder. The resumé which we have set forth above is studded with evidence of a design to kill for revenge, fully conceived, deliberated upon and willfully executed. The jury could readily find the elements of murder in the first degree were established beyond a reasonable doubt. We see no basis for a claim that the verdict was the product of mistake, partiality, prejudice or passion. *R. R.* 1:5–1(*a*); *State v. Lucas,* 30 *N. J.* 37, 80 (1959).

## II.

Defendant charges the prosecution wrongfully contended that but two verdicts were proper under the evidence, to wit, murder in the first degree or acquittal. It is perfectly clear the State advanced that position, and it is equally clear its position was legally untenable. The State of course may press for a first-degree verdict if the proof suffices as it did in this case, but the State may not adopt an "all or nothing" approach when the evidence will legally permit, as it did here, an intermediate result. See *State v. Jackson,* 227 *La.* 642, 80 *So. 2d* 105, 109 (*Sup. Ct.* 1955). However, although the prosecution's position was plainly erroneous, the trial court rejected it and properly instructed the jury to consider all of the verdicts legally possible under the evidence.

The controversy originated upon the *voir dire* of prospective jurors. The prosecutor's questions indicated a juror had two roles, one to determine guilt or innocence, and the other to determine punishment if the finding should be murder in the first degree. When upon defense objection the prosecutor said, "The State's theory in this case is, if this defendant is not guilty of first-degree murder, he should be acquitted," the objection was sustained. The record reads:

"THE COURT: The Court is of the opinion that the question is objectionable. The jury will have two provinces should they determine that the defendant is guilty of murder in the first degree, but they may have more than two provinces. They may have other possibilities that they may consider. You didn't preface the question that should you determine this defendant, from the evidence and from the charge of the Court, is guilty of murder in the first degree—

MR. HEINE: The second part of the question, the second function of this juror will—

THE COURT: That is if they arrive at a verdict of guilty in the first degree.

MR. HEINE: That was my question.

THE COURT: No, you confined it that they had two provinces, guilty of murder in the first degree or not guilty.

MR. HEINE: I didn't say that.

THE COURT: What did you say?

MR. HEINE: I say they have two responsibilities, the first is to determine innocence or guilt of the defendant.

THE COURT: Of any offenses.

MR. HEINE: All right.

THE COURT: In accordance with the Court's charge.

MR. HEINE: Surely, and the second responsibility is that if after arriving at a verdict of guilty of murder in the first degree, then the extent of punishment.

THE COURT: That is different."

In summation, the prosecutor argued:

"Well, ladies and gentlemen, the crux of this case is whether or not the State proved, willful, deliberate and premeditated murder. I say it now, and I will say it again, and I will say it again only because I want to emphasize this proposition: That if we haven't proven a willful, deliberate and premeditated killing, then we have totally failed in proving our case, and the defendant is entitled to be acquitted."

No objection was made. We read this excerpt to repeat the theme the State entertained on the *voir dire*. No doubt the prosecutor had not fully comprehended the court's earlier ruling.

 Needless to say, a verdict will not fall merely because a prosecutor advances a legally unsound proposition. *State v. D'Ippolito*, 22 *N. J.* 318, 324–325 (1956); *State v. Grillo*, 11 *N. J.* 173, 184 (1952), *certiorari* denied, 345 *U. S.* 976, 73 *S. Ct.* 1123, 97 *L. Ed.* 1391 (1953); *State*

*v. Continental Purchasing Co., Inc.,* 119 *N. J. L.* 257, 263 (*Sup. Ct.* 1938), affirmed on opinion below, 121 *N. J. L.* 76 (*E. & A.* 1938). A likelihood of prejudice must appear. *State v. Welsch,* 29 *N. J.* 152, 158 (1959). We can find none.

The error of the State's position was readily correctible by appropriate court action, and such action was taken. See Annotation 67 *A. L. R. 2d* 245, 296 (1959). As already noted, the trial court ruled against the State when its thesis appeared during the *voir dire.* In its charge to the jury, the court opened with the conventional instruction that the judge "is the final arbiter of all questions of law, and, the jury in its deliberations, will be governed by the law as given to it by the Court." The court carefully and at length outlined the various issues in the case with respect to the degree of guilt, leaving to the jury in unmistakable terms the question whether the verdict should be murder in the first degree (with or without a recommendation for life imprisonment), murder in the second degree, manslaughter, or acquittal. It is inconceivable that the jury could have been led by the prosecutor's statements to believe that it was required to choose between first degree and not guilty.

### III.

Defendant moved that jurors be sequestered upon acceptance for service to the end that none selected would hear anything said by those thereafter examined. The motion was denied. The subject was fully considered in *State v. Rios,* 17 *N. J.* 572 (1955), and *State v. Hunt,* 25 *N. J.* 514 (1958), and resolved against defendant's position.

Counsel does not claim some untoward happening, but rather a restriction he felt upon the scope of the examination. Specifically he says he wanted to examine with respect to familiarity with news accounts at the time of the homicide and states he abstained for fear the answers given might impart to others information unknown to them. We do not under-

stand why counsel thought he could not conduct the inquiry in terms calculated to avoid the impact he feared. Indeed, the trial court suggested an appropriate approach. Moreover, if a hurtful incident should have occurred, the authority of the court to admonish the jury to disregard it or to order a mistrial would be on hand. We add the court later instructed the jury to "completely disregard and eliminate from your minds any and all questions, answers and expressions of opinion that you may have heard during the examination of the prospective jurors."

Defendant also charges the prosecutor unduly emphasized the subject of a death sentence in the *voir dire*. We find no factual basis for the complaint nor any objection addressed to the subject.

## IV.

In his opening statement the prosecutor said:

"I can't discuss what the defendant intends to prove because I don't know what his defense is. All I know is that he has pleaded not guilty to this indictment.

I just want to caution you that when the defendant takes the stand, if he takes the stand, he might say anything to save himself."

Defendant objected to a statement of "anything that is not in the State's outline of the case, and I don't think proper reference can be made to anyone taking the stand." The trial court promptly sustained the objection and directed the prosecutor to confine himself to what he intended to prove.

Defendant now claims impropriety in another respect, to wit, the reference to a plea of "not guilty." His point is that a defendant charged with murder cannot insist upon a guilty plea and hence "not guilty" was the only plea he could advance. *N. J. S.* 2A:113–3; *R. R.* 3:5–2(*a*). Defendant says the jury should have been so instructed. There, however, was no request and the objection at trial did not suggest the criticism now made. No element of

prejudice is articulated in the brief. The only area that occurs to us is the possibility the jury might have found an inconsistency between defendant's plea and his testimony that he did fire the fatal shots. But the charge of first degree was disputed and hence the jury could hardly have understood the plea of "not guilty" to be inappropriate.

In his brief defendant says the prosecutor by his quoted statement "sought to impeach the defendant for truth and veracity in that, if he took the stand, he would lie." It is not clear whether this is an exposition of what was meant by the objection at the trial to a reference "to anyone taking the stand" or whether the objection at trial encompassed the different thought that the prosecutor's remark could embarrass a defendant in his decision as to whether to take the stand. In either aspect, the prosecutor's remark was improper. He could not attack defendant's credibility in advance of his testimony. *State v. Marchand,* 31 *N. J.* 223, 232 (1959). Nor, if such were the purpose or necessary effect, could he thus maneuver defendant into taking the stand. *Cf. State v. Edelman,* 19 *N. J. Super.* 350, 356–357 (*App. Div.* 1952). A prosecutor should, as the trial court ruled, limit himself to a statement of what he will prove and not anticipate his final argument. However, we fail to see any harm. The trial court ruled with the defendant, and defendant did not even intimate that he would not have testified but for this incident.

In this connection it is convenient to consider the complaint that at a later stage the trial court deprived defendant of his right to refrain from testifying by stating that he assumed defendant would take the stand. The incident came about in this way: Three statements of defendant were introduced into evidence. With respect to the first, a preliminary hearing as to voluntariness was held in the absence of the jury. Defendant testified with respect to that issue. After the trial court found the statement to be voluntary, the evidence of the State was repeated in the jury's presence. The prosecutor then asked the police witness

to read the confession. Counsel for defendant objected to its being read, urging that it simply be handed to the jury. At that point the record reads:

"THE COURT: Mr. Prosecutor, why do we not conclude, if I might suggest, the entire testimony surrounding the circumstances under which this statement was taken.
I assume that your defendant is going to take the stand, Mr. De Luca?
MR. DE LUCA: Your Honor, at this time I say no.
THE COURT: All right."

It is perfectly plain the court was referring to the defendant's testimony with respect to the issue of voluntariness and nothing more, and that the court, taking it for granted, and understandably so, that defendant would want to repeat the testimony he had given in the jury's absence, was seeking merely to achieve a more orderly presentation of the proof. And we must conclude that the answer of defense counsel, "at this time I say no," meant only that defendant would not testify at that juncture but rather would deal with the subject when he testified in his own defense, as in fact he later undertook to do. There was no protest whatever to the court's question and no intimation anywhere that defendant felt obliged thereafter to testify because of this incident. On the contrary, when counsel for the defendant opened to the jury at the commencement of the trial, he plainly indicated defendant would take the stand, saying, for example, "Joseph will tell you that when he took the Luger he had only one thing to do with it." Indeed, it is difficult to understand how defendant could have avoided the stand. The State's case was replete with evidence of a planned murder. Defendant alone was in a position to advance, for example, the claim that deceased slapped him as he sought to examine the head wound he had inflicted some ten days before. In these circumstances we will not credit a belated assertion on appeal that defendant was in fact deprived of his right to refrain from testifying.

## V.

■ Defendant made no objection to the trial court's definition of the degrees of murder, but asks us to find plain error in the instruction as to second degree. The claim is that the court failed to charge that an intent to kill is consistent with murder in the second degree.

*N. J. S.* 2*A*:113–2 provides:

"Murder which is perpetrated by means of poison, or by lying in wait, or *by any other kind of willful, deliberate and premeditated killing* * * * is murder in the first degree. Any other kind of murder is murder in the second degree * * *."

The trial court first stated three minimum elements required for murder in the second degree and in that discourse stated correctly that an intent to do grievous bodily harm was essential. The court then stated what more the State had to prove to elevate the murder to first degree, to wit, (4) a specific intent to kill, and (5) premeditation, deliberation and willfulness. He defined premeditation to be the conception of a design to kill; deliberation to be a weighing of the matter, of the considerations for and against carrying out the design to kill; and willfulness to be a conscious and knowing execution of the plan to kill with knowledge of the nature of the violent act and of its consequences. We note the trial court dealt with intent to kill as distinct from the three statutory elements "willful, deliberate and premeditated." A specific intent to kill is threaded throughout those terms and perhaps in strictness is not a fourth element. However, the trial court's specification of the specific intent to kill as an additional element served to emphasize that essential ingredient and conduced to the protection of the accused. At any rate, the court plainly charged the State had to establish all of those elements in addition to the elements of murder in the second degree in order to justify a verdict of first degree. The charge specifically included:

"In first degree murder, there must be an intent to take life, and the act must be willful, deliberate and premeditated. If any one, or more of these elements are missing, then the homicide would be murder in the second degree."

Defendant says that since the trial court had charged prior thereto that an intent to do grievous bodily harm would be a sufficient intent for second degree, the jury might have thought a specific intent to kill was inconsistent with second degree and hence required a finding of first degree. But the jury was plainly told that an intent to kill was not enough, that premeditation, deliberation and willfulness must also be found, and that if any of the elements was not found, the verdict could not exceed second degree. Further, the trial court, to avoid any possible misapprehension, added immediately after the paragraph we have just quoted, the following:

"Murder in the second degree may include an intent to take life, or an intent to do grievous bodily harm. Intent to kill is not by itself sufficient to raise second degree murder to first degree murder. All the other elements, willful, deliberate and premeditated, must in addition to intent to kill, be present in order to constitute murder in the first degree."

Hence we cannot find the error defendant alleges. *State v. Smith,* 27 *N. J.* 433, 453 (1958), *certiorari* denied 361 *U. S.* 861, 80 *S. Ct.* 120, 4 *L. Ed. 2d* 103 (1959); *State v. Alexander,* 7 *N. J.* 585, 598 (1951), *certiorari* denied 343 *U. S.* 908, 72 *S. Ct.* 638, 96 *L. Ed.* 1326 (1952).

Defendant's further criticism that the charge unduly stressed first degree has no basis in fact.

## VI.

We find no merit in the remaining issues.

### A.

A slug identified as the one taken from the deceased's body was admitted into evidence. Defendant says the custody

of the exhibit from the time of its removal to the time of trial had not been sufficiently shown. We think it had, but in any event we fail to find any harm. There is no suggestion the exhibit underwent any change which could conceivably affect any issue in the case.

### B.

Photographs of the automobile defendant drove on the fatal mission were identified and referred to in the trial. The State's offer to introduce them into evidence was rejected although the court could well have received them. Defendant's complaint is obscure. He refers to the disclosure of two sets of plates, but the fact that defendant acquired a second set on the night of the murder was otherwise proved and admitted by him. Defendant did not and could not successfully dispute the relevancy of that fact to the offense for which he was tried.

### C.

A doctor testified that when he treated Joan for the head injury suffered on March 5, she gave a history that "she was struck on the head with a soda bottle." This testimony came in after an objection to a question relating to the history the witness received. The objection was that the answer would be "surplusage and accumulative testimony," counsel saying, "There is no question there has been an assault, there had been three sutures, her head was cut open." The court observed it "could not be improper for that reason." As counsel himself anticipated, the answer merely coincided with a fact defendant conceded.

### D.

Mrs. Brennan testified that on the evening of the murder and before the shooting defendant told her he had returned to Camden for revenge, that he had broken his parole and was "going to hit the open road." A Mr. Saskowitz testified to a conversation with defendant just before his arrest, which,

as we read it, contained no adverse admissions at all. Defendant says that neither witness should have testified because on his motion for discovery before trial the prosecutor said he had delivered copies of all statements of defendant upon which he would rely, and the motion was denied upon that representation. The court construed the representation recited in the order to be limited to statements made by defendant after his arrest or at least after the commission of the crime. That interpretation of the order seems correct. We had theretofore established a standard for pretrial discovery as to confessions but otherwise sustained a denial of pretrial discovery of the State's case. *State v. Johnson,* 28 *N. J.* 133 (1958). Defendant does not assert surprise and made no request for an opportunity to investigate to meet the proof.

E.

■ On the basis of defendant's flight to Newark after the homicide, the trial court charged the jury could find it was "a circumstance tending to prove consciousness of guilt." Defendant objected that since defendant admitted the shooting, flight had no bearing on the case. Actually, despite defendant's testimony that he fired the shots, his counsel in summation suggested that his client might in fact be protecting Lee. The suggestion was made on the basis of the evidence that after twice confessing his own guilt defendant asserted Lee was the culprit, only to revert in a final statement to his original confession. At any rate, particularly in a capital case, it is within the discretion of a trial judge to advert to all evidence the State presents notwithstanding defense concessions at trial.

■ The crux of the complaint is that the jury might have understood the charge to mean that flight could evidence consciousness of guilt of first degree, as distinguished from second degree or manslaughter. Of course, flight is not indicative of the degree of guilt, and it would have been appropriate for the trial court so to have informed the jury.

But the questioned instruction followed a long discourse upon the possible verdicts ranging from first degree to acquittal, and we think the jury correctly understood that flight was pertinent only with respect to the issue of guilt of some offense as against the possibility of an acquittal.

F.

 The court charged the jury with respect to the impact of a prior conviction upon the credibility of defendant. Defendant complains the charge, although proper enough if the conviction had been first elicited on cross-examination of defendant, was unwarranted because the defense itself proved the conviction for its own purposes. The suggestion is frivolous. *Cf. State v. Wolak,* 26 *N. J.* 464, 480–483 (1958); *State v. Taylor,* 5 *N. J.* 474, 479 (1950); *State v. Witcher,* 58 *N. J. Super.* 464, 469 (*App. Div.* 1959).

G.

 The court charged the jury may but need not disbelieve all of the testimony of a witness if it found he knowingly and willfully testified falsely as to a material fact. The content of the charge is not criticized. Indeed, there was no objection at all at the trial. Defendant contends the maxim, *falsus in uno, falsus in omnibus,* is inappropriate unless a witness "has been discredited out of his own mouth either by cross-examination or by an unimpeached record," citing *State v. Sturchio,* 127 *N. J. L.* 366, 369 (*Sup. Ct.* 1941). The essential holding in that case was that the charge failed to incorporate the requirement of a conscious falsehood as to a material fact. It is not clear whether the court intended to say the charge may be given only in the situation embraced in the quoted language. In any event we find no support for that limitation. An instruction may of course be given in the stated situation subject to the requirement that there must be conscious falsity as to a material fact. 3 *Wigmore, Evidence* (3d ed. 1940), § 1013. But a trial judge in his discretion may give the charge in

any situation in which he reasonably believes a jury may find a basis for its application. *Hargrave v. Stockloss,* 127 *N. J. L.* 262, 266 (*E. & A.* 1941). Defendant does not say how he was prejudiced, and it is difficult to see how unfairness could result, for, as *Wigmore* points out (although in support of his conclusion that the charge should not be given at all), "it merely informs the jury of a truth of character which common experience has taught all of them long before they become jurymen." (*Vol.* 3, § 1010, at *p.* 678.)

## H.

The foreman of the jury announced the verdict "Murder in the first degree." Defendant says the verdict was incomplete for want of the words "guilty of." There is no room to doubt what the jury meant. The trial court informed the jury that it "will record your verdict as rendered, guilty of murder in the first degree" and added the "jurors will be polled, and as each juror's name is called, if such juror agrees with the verdict recorded, will you please respond, 'I do.' If you do not agree with the verdict as it is recorded, then kindly respond that you do not agree." The court then repeated, "I repeat, the verdict as recorded is guilty of murder in the first degree," whereupon each juror upon the clerk's call responded "I do." Defendant further urges each juror should have been required to repeat the verdict and that the jurors should have been called by name rather than by number, *i. e.,* "Juror No. 1," *etc.* There is no force in these criticisms. See *State v. Smith, supra* (27 *N. J.,* at *pages* 455–457); *State v. Hunt, supra* (25 *N. J.,* at *page* 535); *State v. Huff,* 14 *N. J.* 240, 255 (1954).

## I.

We find no basis for reversal in the additional portions of the prosecutor's summation of which defendant complains.

At the oral argument defendant for the first time contended the trial court's handling of the trial was unfair.

Leave was granted to file a supplemental statement pinpointing the specific situations relied upon. We have examined all of the references and find the alleged grievance to be wholly without factual basis.

The judgment is accordingly affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.