**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2757-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RASHON A. CAUSEY, a/k/a
RASHAWN CAUSEY, BREAD
HARRIS, SHURON HARRIS,
RASHON A. CASUEY, RASHAN
CASUEY, RON-RON, RA-RA,
SHAUN M CAUSEY, RASHAWN A.
CAUSEY, and RASHON A. CAUSEY,

     Defendant-Appellant.

_____

        Submitted April 1, 2019 – Decided April 10, 2019

        Before Judges Haas and Sumners.

        On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 17-03-0190.

        Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried before a jury on a four-count indictment, defendant Rashon Causey was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:11-3(a)(2) (count one); second-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count two); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count three); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count four). The trial judge merged counts two, three, and four into count one, and sentenced defendant to fifty years in prison, subject to the 85% parole ineligibility provisions of the No Early Release Act, N.J.S.A. 2C:43-7.2.

On appeal, defendant raises the following contentions:

POINT ONE

THE TRIAL COURT'S OMISSION OF A THIRD[-]PARTY GUILT JURY CHARGE, WHEN THAT WAS [DEFENDANT'S] DEFENSE, VIOLATED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL. (U.S. Const. [a]mends. V, VI, and XIV; N.J. Const. (1947), [a]rt. I, Pars.[]1, 9, and 10[).] (Not Raised Below).

POINT TWO

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MANIFESTLY EXCESSIVE SENTENCE.

After reviewing the record in light of the contentions advanced on appeal, we affirm.

## I.

Defendant and the victim, Shanai Marshall, were the parents of a child. At the time of her murder, the victim was living in a house in Mount Holly with three of her friends, Patrick Johns, Ann Bowers, and Tabitha Cannon. Defendant had previously lived in the house and the group all knew each other. Defendant was staying in nearby Lumberton with his friend, Nicole Blackmon, in her new apartment.

On the day of the murder, Bowers saw defendant and Marshall together at the victim's mother's house in Willingboro, where their child lived. Bowers, defendant, and Marshall then went to a butcher shop together, but Bowers and Marshall later returned to their home without defendant.

According to Cannon, defendant called Marshall "multiple" times later that night on a phone that Johns had given her to use. Marshall did not answer. Cannon testified that defendant then called her phone, but Marshall told Cannon

A-2757-17T4

not to answer it because she "was done with him and she didn't want to talk to him."

Around midnight, Johns was preparing to take a shower in the downstairs bathroom, while the victim, Bowers, and Cannon were watching television upstairs. Suddenly, Johns heard the front door of the house being kicked in and, when he went to look, saw defendant walking up the stairs with a knife in his hand. Johns testified that he yelled to warn the women and then put on his clothes, fled the house, and called 911.

When Cannon heard the sound of the door being kicked in, she stood on a couch, looked over the bannister, and saw defendant coming up the stairs. He told Marshall, "You think I'm fucking playing with you." Marshall tried to run to her bedroom. Although Bowers testified that she could not see the knife in defendant's hand, she saw him swinging his arm toward Marshall, and the victim then slumped to the ground. Defendant kept stabbing Marshall after she fell.

Bowers testified that defendant "was cool, calm and collected" throughout the attack. After he stabbed Marshall, defendant walked down the stairs and left the house. Bowers grabbed a shirt and pressed it to Marshall's head, and Cannon called 911.

A-2757-17T4

When the police arrived, Johns, Bowers, and Cannon immediately identified defendant as Marshall's assailant. Marshall was transported to a trauma unit, where she died. The doctors found that the blade of the knife that was used to kill her had broken off, and was still embedded in her brain. The police learned that the knife was an Oneida, 4.5-inch steak knife.

The State also called Blackmon as a witness. She testified that defendant went out to a bar earlier in the evening. When he returned home, he asked Blackmon to drive him to a convenience store so he could buy cigarettes. On the way, he asked her to stop because he said he needed to pick something up. Blackmon recognized the location as being near Marshall's home. Blackmon testified she did not want to stop on the street because there were people in the area, so she parked near an alley. A surveillance camera captured defendant getting out of the car and returning a little over two minutes later.

Blackmon testified that when defendant returned to the car, he told her that "people . . . was acting crazy" at the house where he was going, "[s]o he just came on back" to the car. Blackmon stated that defendant was calm and joked around with her as she drove to the store. Once there, she went in to buy the cigarettes, returned to the car, and drove defendant back to her apartment. Defendant went into the bedroom and fell asleep.

5

Based upon the positive identifications provided by Johns, Bowers, and Cannon, the police arrested defendant later that night. After obtaining a search warrant for Blackmon's apartment, the police seized several Oneida steak knives like the one used to kill the victim, as well as other knives. Blood stains in the apartment's hallway and on a pair of defendant's jeans matched defendant's DNA. The police also collected DNA from the victim's fingernails. The profile matched defendant's DNA, but the results could not rule out other men in defendant's family as contributors.

Defendant did not testify at trial. He called an investigator who went to the site where Blackmon had parked her car, and filmed and timed himself walking to the victim's house and back. The investigator testified that depending on the pace a person walked, it would take between two minutes and two minutes and twenty seconds to make the roundtrip.

II.

In Point I, defendant argues for the first time on appeal that the trial judge was obligated, sua sponte, to supply the jury with the model instruction about third-party guilt. See Model Jury Charges (Criminal), "Third Party Guilt Jury Charge" (approved March 9, 2015). This instruction essentially reinforces the more general instruction to the jurors, which was repeatedly delivered by the

judge, underscoring that the State always maintains the burden of proof in a criminal trial, and the defense has no obligation to prove anything or present any evidence. The third-party guilt instruction simply ties those general precepts to a context where a defendant is suggesting that some other person is responsible for the harm he or she is alleged to have caused.

The issue arises in this context. While cross-examining Johns, defendant's attorney asked him about his prior encounters with an individual known only as "Fat Boy." Johns testified that this individual sold drugs and had previously lived in the house with Johns against Johns' wishes. At some point in the past, "Fat Boy" had taken, or threatened to take, Johns' car away from him, and had also "hurt people, kicked them and punched them and hit them with weapons and everything else." In response to defense counsel's questions, Johns made clear that "Fat Boy" was not at the house on the night of Marshall's murder.

Defendant's attorney also asked Cannon about "Fat Boy." Cannon testified that she knew "Fat Boy," but had never purchased drugs from him, and had never seen him threaten anyone who lived in the house. During her summation, defense counsel nevertheless speculated that "Fat Boy," rather than defendant, may have murdered the victim.

Although Johns, Cannon, and Bowers all immediately identified defendant as the murderer, there was nothing connecting "Fat Boy" to Marshall. Moreover, defense counsel never asked that the judge instruct the jury on third-party guilt, yet defendant now argues that the judge committed plain error by failing to provide this charge at the end of the trial. We disagree.

It is undisputed that "[a]ppropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981). The trial judge must guarantee that jurors receive accurate instructions on the law as it pertains to the facts and issues of each case. Ibid. "A trial court is vested with discretion in delivering the jury instructions that are most applicable to the criminal matter before it." State v. Funderburg, 225 N.J. 66, 80 (2016) (citing State v. Ernst, 32 N.J. 567, 583-84 (1960)).

"Plain error in the context of a jury charge . . . [must be] sufficiently grievous . . . to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hyman, 451 N.J. Super. 429, 455 (App. Div. 2017) (alterations in original) (quoting State v. Torres, 183 N.J. 554, 564 (2005)). "Under the plain error standard, [the] 'defendant has the burden of proving that the error was clear and obvious and that it affected his

[or her] substantial rights.'" State v. Koskovich, 168 N.J. 448, 529 (2001) (quoting State v. Morton, 155 N.J. 383, 421 (1998)).

That burden is not met here. A defendant has the right to introduce evidence of third-party guilt "if the proof offered has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case." State v. Cotto, 182 N.J. 316, 332 (2005) (quoting State v. Fortin, 178 N.J. 540, 591 (2004)). It is "not enough to prove some hostile event and leave its connection [to the crime charged] to mere conjecture." State v. Sturdivant, 31 N.J. 165, 179 (1959). "There must be some link between the evidence and the victim or the crime." State v. Koedatich, 112 N.J. 225, 301 (1988).

In this case, there was no evidence that someone other than defendant was involved in Marshall's murder. All three of the individuals who lived with the victim identified defendant as the knife-wielding assailant. There was no link whatsoever between Johns' prior encounters at some unspecified time in the past with an individual known only as "Fat Boy" and the present case. Nothing in this record suggests that the questions defense counsel posed to Johns and Cannon were anything more than either a fishing expedition or an attempt to inject a red herring into the case. Thus, defendant's argument was mere conjecture.

Because there was no competent evidence of third-party guilt adduced at trial, the omission of an unrequested third-party guilt instruction was not plain error. Therefore, we reject defendant's newly minted argument on this point.

III.

Turning to defendant's final argument, he asserts in Point II that his sentence was excessive. We disagree.

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention[,]" and "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 64-65 (2014) (first citing State v. Fuentes, 217 N.J. 57, 72 (2014); then quoting State v. Blackmon, 202 N.J. 283, 297 (2010); and then citing Fuentes, 217 N.J. at 74). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court. Id. at 65. See also State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95 N.J. 334, 365 (1984).

We are satisfied that the trial judge made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably

credible evidence in the record, and applied the correct sentencing guidelines enunciated in the Code. Accordingly, we discern no basis to second-guess the sentence.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION