# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0931-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GUILLERMO E. BUSTILLO, a/k/a
JOSE ARMANDO BETANCUR,
GUILLWEMO E. BUSTILLO RIOS,
GUILLERMO ENRIQU BUSTILLO
RIOS, and JOSE DONALDO-RIOS,

    Defendant-Appellant.

_____

Submitted February 3, 2021 – Decided March 26, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-12-1075.

Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the brief).

Lindsay V. Ruotolo, Acting Prosecutor of Union County, attorney for respondent (Meredith L. Balo,

Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant was convicted of second-degree sexual assault, N.J.S.A. 2C:14-2(b), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). He was sentenced to an aggregate prison term of ninety months, subject to an eighty-five percent parole disqualifier imposed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He appeals arguing:

> POINT I
>
> PROSECUTORIAL MISCONDUCT PERMEATED BOTH THE OPENING AND SUMMATION, DENYING [DEFENDANT] DUE PROCESS AND A FAIR TRIAL. (NOT RAISED BELOW).
>
> POINT II
>
> THE SENTENCE IS MANIFESTLY EXCESSIVE, REQUIRING RESENTENCING. (NOT RAISED BELOW).

For the reasons that follow, we affirm.

I

A three-day jury trial was held in August 2016. M.C., Sr. (Mike)[1] testified that in the early evening of August 17, 2014, he was driving with his two children, eight-year-old son M.C., Jr. (Mikey) and five-year-old daughter, J.C. (Jackie) in his car, when he agreed to give defendant a ride to the train station. Prior to dropping off defendant, Mike had to stop by a friend's house to get information about a job. Mikey sat in the van's front seat; Jackie and defendant sat in the backseat.

Upon arriving at his friend's house, Mike parked the van in a lot behind the house and got out to speak with his friend; Jackie got out of the van to play. At some point later, Mike observed defendant, who was drunk, playing with Jackie, chasing her. When Mike was ready to leave, he called for Jackie since he did not see her. As he approached his van, Mike saw his daughter in the rear passenger seat. While he was entering the van, defendant exited it. Mike testified that, when he looked back at Jackie, he noticed her shorts were unbuttoned, so he asked her what happened. Jackie told him: "[D]addy, that man put his hand inside here[,]" pointing to her vagina.

---

[1] We use initials and pseudonyms to refer to the victim and the victim's family to protect the victim's privacy. R. 1:38-3(c)(12).

A-0931-18

Mike got out of the van and hit defendant. Defendant fled. Mike, with his children in the van, then drove searching for defendant. After locating defendant, Mike tripped him when he tried to flee, then hit him before he was able to run away.

That night, the family reported the incident to the Union County Prosecutor's Office. The next day, Detective Timothy Durkin of the Prosecutor's Office spoke to Jackie. He testified Jackie told him that "the guy" put his hand in her pants and touched inside her middle part, and that he tried to kiss her with his tongue in her mouth. Durkin stated she told him that "the guy" also said he wanted to marry her, and he wanted her to put her hand in his pants, but she refused. Jackie confirmed these statements when she testified.

Mikey testified he was in the car while defendant assaulted J.C. but he said he did not hear anything because he was focused on playing a video game on a cell phone. Defendant did not testify.

The jury found defendant guilty of second-degree sexual assault and third-degree endangering the welfare of a child. At sentencing, the judge gave moderate consideration to aggravating factor two, gravity and seriousness of harm inflicted on the victim, N.J.S.A. 2C:44-1(a)(2), and slight consideration to aggravating factor six, prior record, N.J.S.A. 2C:44-1(a)(6), which outweighed

4

the non-existing mitigating factors.  Defendant was sentenced to ninety months in prison, subject to NERA, for second-degree sexual assault, and to a fifty-four-month prison term for third-degree endangering the welfare of a child, to run concurrently.

## II

To warrant a new trial for prosecutorial misconduct, the conduct must have been "'clearly and unmistakably improper,' and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense."  State v. Smith, 167 N.J. 158, 181-82 (2001) (quoting State v. Timmendequas, 161 N.J. 515, 575 (1999)).  We must assess "the severity of the misconduct and its prejudicial effect on the defendant's right to a fair trial."  Timmendequas, 161 N.J. at 575.  In doing so, "we consider the tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred."  Ibid. (citing State v. Scherzer, 301 N.J. Super. 363, 433 (App. Div. 1997)).

In evaluating claims of prosecutorial misconduct, we consider: "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to

A-0931-18

disregard them." State v. Frost, 158 N.J. 76, 83 (1999) (citations omitted). If no objections were made to the remarks at trial, they will generally not be deemed prejudicial. Ibid. The failure to object to such remarks "also deprives the court of an opportunity to take curative action." Id. at 84 (citation omitted).

Absent an objection, defendant must establish the conduct constitutes plain error, State v. Feal, 194 N.J. 293, 312 (2008), meaning that our inquiry is to determine whether there was an error that was "clearly capable of producing an unjust result[.]" R. 2:10-2. Reversal is required if the error is "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." State v. Green, 447 N.J. Super. 317, 325 (App. Div. 2016) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Defendant argues that the prosecutor issued an improper "call to arms" in both her opening and closing arguments; moreover, he contends, summation remarks improperly bolstered the credibility of Jackie. He thus claims he was denied due process and a fair trial, requiring reversal of the convictions. U.S. Const. amends. V, XIV; N.J. Const. art. I, ¶¶ 1, 9, 10.

We agree with defendant that the prosecutor made inappropriate statements during her opening and summation. When making opening statements, "prosecutors should limit comments . . . to the 'facts [they] intend[]

in good faith to prove by competent evidence[.]'" State v. Echols, 199 N.J. 344, 360 (2009) (first and second alterations in original) (quoting State v. Hipplewith, 33 N.J. 300, 309 (1960)). Because "[t]he purpose of a prosecutor's opening statement is to present to the jury an outline or summary of what the State expects to prove[,] [p]rosecutors should limit themselves in their openings to what they will prove and not 'anticipate' their 'final argument.'" State v. W.L., 292 N.J. Super. 100, 108 (App. Div. 1996) (quoting State v. Ernst, 32 N.J. 567, 577 (1960)). Prosecutors are prohibited from suggesting in their opening statements that they know of reasons beyond the evidence why the jury should reach a certain verdict. See State v. Wakefield, 190 N.J. 397, 438-40 (2007). They are also prohibited from making "send a message to the community" or "call to arms" comments to the jury. State v. Neal, 361 N.J. Super. 522, 537 (App. Div. 2003).

The prosecutor stated in her opening: "[A]t the end of this case, . . . really we're just going to ask you to go back into that jury room and ask you to submit a verdict that is consistent with what the facts are and what the truth is . . . and just do justice[.]" She reiterated her comments at closing telling the jury that "[a]t the beginning of this case which was yesterday, I told all of you that at the

end of this case the State was going to ask you to do justice, which is find a verdict that's consistent with the truth[.]"

As a general principle, it is improper for a prosecutor to convey his or her personal opinion to a jury. State v. Michaels, 264 N.J. Super. 579, 640 (App. Div. 1993), aff'd, 136 N.J. 299 (1994). Thus, a prosecutor's personal opinion in summation bolstering the credibility of a witness may constitute error. See State v. Farrell, 61 N.J. 99, 105 (1972); see also State v. Rivera, 437 N.J. Super. 434, 449 (App. Div. 2014). ("Our Supreme Court has consistently condemned conduct that invades the exclusive province of the jury to resolve factual disputes, assess credibility and decide whether the State's evidence establishes guilt.").

In summation, the prosecutor stated, "[Jackie]'s not lying." In addition, she opined that there is no reason for Jackie and her then ten-year-old brother Mikey to lie. She argued:

> Did [Jackie] look like she was lying at all? Did [Mikey] look like he was lying at all? They're up there doing the best they can. They're kids. They're doing the best they can. Speak into the microphone. Say yes or no. They don't necessarily remember all those things, but they're doing the best they can. They're not lying about anything. This is just what happened.

A-0931-18

She further added: ". . . just in case I haven't said this yet, there is no motive to lie here. What on earth reason to lie is there in this case? . . . . [T]here's no feasible motive to lie in this case."

Despite the inappropriateness of the prosecutor's remarks, defendant was not deprived of a fair trial. First, the judge instructed the jury that the attorney's opening statement and summation were not evidence as their "comments . . . are not controlling[;]" and the jury was the "sole and exclusive judges of the facts, judges of the evidence, judges of the credibility of the witnesses, and judges of the weight to be attached to the testimony of each witness." Second, in the context of the entire trial, the prosecutor's improper comments did not cause the jury to reach a result it would not have reached had those comments remained unsaid. There was overwhelming direct evidence from the victim's testimony, which mirrored her reports to her father immediately following the incident and to the investigating detective the next day, as well as corroborative evidence by her father that she was sexually assaulted by defendant. The prosecutor's comments therefore do not compel reversal because there was no plain error.

III

Defendant argues his sentence was excessive based upon the weighing of the sentencing factors. He argues the only basis for imposing a ninety-month

9

sentence is punishment given that: prior to sentencing, he only had "two prior disorderly offenses [which were] over a decade old" and a nine-year-old municipal ordinance violation; he had no previous indictable offenses; and the judge found there was no need to deter, aggravating factor nine, N.J.S.A. 2C:44-1(a)(9). We disagree.

The scope of our review of the sentence is limited. As a general matter, we review sentences under an abuse of discretion standard. State v. Pierce, 188 N.J. 155, 166 (2006). Under that standard, a "reviewing court must not [simply] substitute its judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). Rather,

> [t]he appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

In this instance, the judge carefully considered the aggravating and mitigating circumstances and thoroughly explained his findings. See State v. Case, 220 N.J. 49, 64–65 (2014) (requiring judges to consider any relevant

10

aggravating and mitigating factors called to their attention and to explain how they arrived at a particular sentence). The judge, who presided over the trial and was intimately familiar with the offenses, gave appropriate weight to aggravating factors two and six. His findings were based on competent and credible evidence in the record and are in accordance with our sentencing guidelines. We discern no basis to second-guess the sentence as it was neither shocking nor manifestly excessive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0931-18